393 A.2d 1201

In the Interest of Michael Lynn ECKERT, a minor and Zachery S. Eckert, a minor.

Appeal of Michael LYNN, a minor and Zachery S. Eckert, a minor.*

Superior Court of Pennsylvania.

Submitted Dec. 30, 1977.

Decided Dec. 14, 1978.

* *EDITOR'S NOTE*: The opinion of the Supreme Court of Pennsylvania in *Tunnicliff v. Commonwealth Department of Public Welfare*, published in the advance sheets at this citation (393 A.2d 1201) was withdrawn from the bound volume because rehearing is pending.

162

Robert E. Kerper, Jr., Assistant Public Defender, Reading, for appellant, Michael Lynn Eckert.

Ralph W. D. Levan, Assistant Public Defender, Reading, for appellant, Zachery S. Eckert.

J. Michael Morrissey, District Attorney, Reading, for appellee.

Before WATKINS, former President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal is taken from an order of the court below refusing to suppress evidence and adjudicating the minor appellants delinquent. The issue we must decide is whether the lower court erred in determining that sufficient probable cause was presented to the magistrate to justify the issuance of the initial warrant to search the premises.[1] For the following reasons, we find no error, and therefore affirm the order entered below.

Early in the morning of September 2, 1976, between 6:00 and 6:30 a. m., several shooting incidents occurred in the vicinity of the 100 block of Penn Street in Reading. Two automobiles and a bakery truck were struck by bullets, and a machine shop in the area was fired upon.

On the same day, between 1:00 and 7:00 a. m., a cafe located immediately north of the area of the shootings was broken into, and several bottles of whiskey, cases of beer, cigarettes, cans of soup and snack foods were removed, along with money taken from amusement and vending machines that were forced open.

---

1. Appellants also contend that the second search warrant lacked probable cause, that their arrests were unlawful, that the statements given by them after arrest were involuntary, and that the evidence against them was insufficient to sustain the adjudication of delinquency. We have reviewed the record and find these allegations meritless.

Later the same morning, Detective Lorrin Young of Reading Police Department was sent to investigate the cafe burglary, after also having been informed of the shooting incidents. After speaking with the owners of the cafe and obtaining a verbal inventory of the stolen items, Officer Young went to the area of the shootings, where a police investigation was underway.

After the police had determined that the shots came from the north (odd-numbered) side of the 100 block of Penn Street, they searched all houses in the row, which were vacant and boarded up, except for 141 Penn Street, which was occupied by the Eckert family. While Officer Young and other policemen were on the fire escape of 139 Penn Street, they observed several spent .22 caliber cartridges on the second-floor roof of 141 Penn Street.

Young subsequently filed an application for a search of the Eckert home and seizure of a .22 caliber rifle, .22 caliber bullets, .22 caliber spent shells, and sneakers with a tread design similar to prints seen on the roof of 139 Penn Street. The warrant was issued, and the search yielded a .22 caliber rifle, .22 caliber bullets, and .22 caliber spent shells. During the search, Young observed items within the house similar to items described as stolen from the Sixth Ward Cafe, and secured a warrant to seize these items.

Mrs. Eckert and her two sons then accompanied the police to City Hall, where each boy gave a statement admitting participation in the cafe burglary and the shootings. The juveniles were then processed by the juvenile probation office, and subsequently adjudicated delinquent in the court below after their motion to suppress evidence was denied. This appeal followed.

Appellants contend that the initial warrant to search their residence was issued without probable cause because the application for the warrant does not connect the information presented to 141 Penn Street.

The application describes the premises to be searched as follows:

Three (3) story red brick building located at and Known as 141 Penn. St. Reading, Berks Co. Penna.

The items to be searched for and seized are described as .22 Cal. Rifle (Make unknown) and any .22 Cal. Bullets. Also any Spent (empty, or used) .22 cal. cartridges, which may be in the building or on the roof of this building. Any sneakers which have tred design similar to the sneaker, prints seen by officers near spent cartridges found on the roof of 139 Penn St. Reading, Berks, Pa.

And, finally, the probable cause section sets forth the following facts:

Investigation revealed a sniper shot at and hit several autos and houses in the area of the 100 blk. Penn. St. Investigation led to the checking of the vacant buildings in the 100 blk. Penn. St. Officers observed empty .22 Cal shell casings on the roof of the only occupied building in the row of homes where the shots are believed to have originated from.

Investigation was limited to the 100 Blk. Penn. St. due to the fact, all autos were hit while entering or leaving the Penn St. Bridge at second and Penn St. Reading.

█ Appellants argue, and the dissent agrees, that the warrant application fails to connect any of the information presented with the premises to be searched, because at no point is the "only occupied building in the row of homes" identified as 141 Penn Street. A common sense reading of the application leads us to a different conclusion.

We agree with appellants that the language in the application to the effect that spent cartridges were found on the roof of 139 Penn Street must have been a misstatement.[2] We disagree, however, with the legal effect thereof.

█ A necessary prerequisite to the issuance of a valid search warrant is the presentation to a magistrate by the affiant of sufficient information to persuade a reasonable person that probable cause to search exists. The seminal

2. No mention of spent cartridges being found on the roof of 139 Penn Street appears in the suppression transcript.

case in this area is *Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970), wherein the Court invalidated a search warrant based upon the affiant's misstatement that the defendant had already been identified as a robber. From later cases, the rule has evolved that *D'Angelo* only applies to deliberate misstatements of material facts. *Commonwealth v. Jones*, 229 Pa.Super. 224, 323 A.2d 879 (1974).[3]

The test of materiality is not whether the misstatement strengthens the application, but rather whether the misstatement is essential thereto. *Commonwealth v. Yucknevage*, 257 Pa.Super. 19, 24, 390 A.2d 225, 227 (1978). This test is performed by deleting the misstatement and then determining whether sufficient probable cause remains in the application to issue a valid warrant. *Commonwealth v. Tucker*, 252 Pa.Super. 594, 384 A.2d 938 (1978); *Commonwealth v. Scavincky*, 240 Pa.Super. 550, 359 A.2d 449 (1976).

Applying these standards to the case at bar results in the magistrate having been presented with the following facts:

a) Sniper shooting was directed at several homes and automobiles in the area of the 100 block of Penn Street;

b) Police investigation was limited to the 100 block of Penn Street after the police determined that all target automobiles were damaged on the side facing the odd-numbered side of the 100 block;

c) The police searched the vacant buildings in the 100 block of Penn Street, and saw empty .22 caliber shell casings on the roof of the only occupied building in the row;

d) Officer Young was seeking a warrant to search 141 Penn Street.

From these facts, a person of reasonable intelligence and understanding could deduce that since 141 is an odd number, the premises bearing that number were within the row of homes to be searched. The magistrate must also have

---

**3.** *Jones* defines a material fact as one without which probable cause to search would not exist. 229 Pa.Super. at 230, 323 A.2d 879.

realized that as the police searched the vacant houses on the block, they observed the spent shell casings on the roof of 141 Penn Street, which must have been the only occupied home in the row, and subsequently sought a warrant to search 141.

■ The dissent argues that nothing in the warrant application describes 141 as the only occupied house on the block. Common sense provides the connection. It takes no stretch of the imagination or twisted construction of the affidavit to realize that had 141 been an unoccupied dwelling, the police would not have sought a warrant to search it. Indeed, a warrant to search the vacant premises in the row was not required. *See, e. g., Commonwealth v. Coyle*, 415 Pa. 379, 203 A.2d 782 (1964); *United States v. Thomas*, 216 F.Supp. 942 (N.D.Cal.1963). As a consequence, the police had to have been seeking a warrant to search the only occupied building in the row, which was precisely 141 Penn Street.

According, we hold that the court below committed no error in refusing to suppress the fruits of the search of the premises seized pursuant to a valid warrant.

Order refusing the motion to suppress and adjudicating appellants delinquent affirmed.

SPAETH, J., files a dissenting opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

Two search warrants are involved. Because the first warrant was issued without probable cause, the order of the lower court adjudicating appellants delinquent should be reversed and a new hearing directed.

The first warrant described the premises to be searched as "Three (3) story red brick building located at and known as 141 Penn. Street, Reading, Berks Co. Penna." The lower

court, in holding that the warrant issued on probable cause, stated that

> it [the affidavit in support of the issuance of the warrant] stated that officers observed empty .22 caliber shell casings on the roof of 141 Penn Street which was the only occupied building in the row of houses in the 100 block. Slip Opinion of lower court at 9.

This statement must have been an inadvertence. The affidavit described the items to be searched for as follows:

> .22 Cal. Rifle (Make unknown) and any .22 Cal. bullets. Also any Spent (empty, or used) .22 cal. cartridges, which may be in the building or on the roof of this building. Any sneakers which have tred [sic] design similar to the sneaker, prints *seen by officers near spent cartridges found on the roof of 139 Penn St., Reading, Berks, Pa.* (Emphasis added.)

The affidavit also included the following in the statement of probable cause:

> Officers observed empty .22 Cal. shell casings on the roof of the only occupied building in the row of homes where the shots are believed to have originated from.

However, nowhere in the affidavit is "the only occupied building in the row of homes" identified as being 141 Penn Street.

It may be assumed—appellants contest the point—that the affidavit stated probable cause to search 139 Penn Street. "139", however, could not have been a typographical error for "141". A magistrate given reason to believe that bullets may be found at "139" has no reason to believe that they may be found at "141". As I understand the majority opinion, it says "[t]he magistrate must . . . have realized" he was being asked to issue a warrant for "141". Majority slip opinion at ——. I should be surprised if he did; I wouldn't have.

The order of the lower court adjudicating appellants delinquent should be reversed and a new hearing directed.