398 A.2d 1369

COMMONWEALTH of Pennsylvania

v.

Roberto I. TOME, Appellant.

Supreme Court of Pennsylvania.

Submitted Jan. 18, 1979.

Decided March 16, 1979.

262

George B. Ditter, Chief, Appeals Div., Norristown, for appellant.

Eric J. Cox, Asst. Dist. Atty., Norristown, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Roberto I. Tome, was convicted by a jury of two counts of murder of the second degree, burglary, criminal attempt and violations of the Uniform Firearms Act for the September 28, 1974, shooting deaths of two sisters, Doris and Jean Maile, at their home and place of business known as the Villanova Nursery in Upper Merion Township, Pennsylvania. Postverdict motions were denied and appellant was sentenced to a single prison term of ten to twenty years for the two murder convictions,[1] with a consecutive ten-to-twenty-year prison term on the burglary conviction. Sentence was suspended on the remaining convictions. Approximately two weeks after the original pronouncements of sentence, however, appellant's sentence for the murder convictions was increased to a single term of life imprisonment. The remaining sentences were not altered. This direct appeal followed from the judgment of sentence on the murder convictions. A direct appeal from the judgment of sentence on the burglary conviction was taken to the Superior Court, which certified that appeal to this court for disposition.[2]

Appellant raises numerous allegations of error, many of which deal with the effectiveness of counsel at all stages of the instant proceedings. In *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), we stated:

1. See discussion, *infra,* on appellant's double jeopardy claim.

2. While appellate counsel for appellant, a member of the Public Defender's Office of Philadelphia, was preparing his brief, appellant requested that the public defender withdraw from the case. Appellate counsel filed a petition to withdraw, which this court denied on January 20, 1978; however, appellant was given permission to personally file additional briefs in support of his appeal. Appellant did, in fact, file two additional *pro se* briefs.

"In resolving this contention we are guided by the standard set forth in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

'[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests.'

"The initial factor which must be considered in applying this reasonable basis standard is whether the claim which post-trial counsel is charged with not pursuing had some reasonable basis. In *Maroney,* 427 Pa. 599, 235 A.2d 349, we noted that 'a finding of ineffectiveness could never be made unless we concluded that the alternatives not chosen offered a potential for success substantially greater than the tactics actually utilized.' *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. at 605 n. 8, 235 A.2d at 353. Because counsel does not forego an alternative which offers a substantially greater potential for success when he fails to assert a baseless claim, counsel cannot be found to have been ineffective for failing to make such an assertion. See, e. g., *Commonwealth v. Nole,* 461 Pa. 314, 336 A.2d 302 (1975); *Commonwealth v. Harrison,* 228 Pa.Super. 42, 323 A.2d 848 (1974); cf. *Commonwealth v. Goosby,* 461 Pa. 229, 336 A.2d 260 (1975); *Commonwealth v. Rice,* 456 Pa. 90, 318 A.2d 705 (1974). It is only when the claim which was foregone was of arguable merit that we must make an inquiry into the basis for the post-trial counsel's decision not to pursue the matter." (Emphasis in original.)

Appellant first claims that trial counsel was ineffective for failing to file a motion to quash the indictments for burglary, criminal attempt and violations of the Uniform Firearms Act. The facts are as follows.

Appellant was arrested without a warrant on October 15, 1974, and was charged with murder and criminal conspiracy. A preliminary hearing on these charges was held on October 25, 1974. On March 19, 1975, appellant was charged additionally with burglary, criminal attempt and violations of

the Uniform Firearms Act. On March 25, 1975, appellant signed a written waiver of a preliminary hearing on these charges. All charges were subsequently consolidated for trial.

Appellant first believes a motion to quash, if filed, would have been granted because of Pa.R.Crim.P. 131 and our decision in *Commonwealth v. Earp*, 476 Pa. 369, 382 A.2d 1215 (1978). We disagree. Pa.R.Crim.P. 131(b) provides:

"When more than one offense is alleged to have been committed by one person arising from the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case."

Appellant believes that since the charges of burglary, criminal attempt and violations of the Uniform Firearms Act were brought in a second subsequent complaint to the one charging murder and conspiracy, Rule 131(b) requires dismissal of the charges brought on the second complaint. Pa.R.Crim.P. 131(c) provides, however, that:

"Upon application by any interested person and proof that any provision of paragraphs (a) or (b) hereof was violated, a judge of the court may order the forfeiture of all additional costs of the issuing authority accrued by reason of such violation, and thereafter such costs shall not be taxed in the case."

A reading shows that Subsection (c) gives the remedy for a violation of Subsection (b), and the remedy is clearly *not* dismissal of the charges brought on the second complaint, as suggested by appellant.

Further, *Commonwealth v. Earp, supra*, is inapposite. There, the defendant was charged with numerous offenses arising from the same episode, two of which were murder and conspiracy. At a preliminary hearing on those two charges, both were dismissed for want of evidence. The defendant, however, was continuously held on the remaining charges, was subsequently rearrested, and was charged again with murder and conspiracy. The defendant's trial commenced within 180 days of the rearrest date but more than 180 days from the original arrest date. The court held

that under these facts, the defendant's trial was not commenced within the time period prescribed by Pa.R.Crim.P. 1100, and, therefore, the defendant was discharged. The reason we believe that *Earp* does not control is because while Rule 1100 calls for discharge upon violation of that rule, Rule 131 prescribes no such remedy. In the instant case, appellant could have avoided paying the costs involved on the second complaint. Dismissal of the charges, however, was not possible on the grounds urged by appellant and counsel was thus not ineffective for failing to file a motion to quash because of a violation of Rule 131(b).

Appellant next claims the charges filed on the second complaint should be dismissed because he was not represented by counsel at the preliminary hearing. As appellant signed a written waiver of the preliminary hearing, his contention is frivolous.

Appellant next claims that his trial counsel was ineffective for failing to file a motion to quash all indictments because the prosecution used falsified evidence. Appellant, however, makes no specific allegations of what falsified evidence was used. Since his contention is not supported by the record, it is meritless.

Appellant next alleges that trial counsel was ineffective because he allowed his co-counsel to materially alter various portions of the record, all of which changes were prejudicial to appellant. Specifically, appellant claims that all portions of the record dealing with the date of appellant's arrest were changed from October 14, 1974 (the date on which appellant claims he was arrested) to October 15, 1974. Appellant believes this to be significant because if, in fact, the arrest occurred on October 14, he was not afforded a preliminary hearing within ten days, as called for in Pa.R. Crim.P. 140(f)(1). All of the Commonwealth's witnesses who testified concerning appellant's arrest stated that the arrest occurred on October 15. Appellant's argument is thus without merit.

268

■ Appellant also argues that trial counsel was ineffective for failing to bring to the court's attention that a candidate for district attorney in Montgomery County was present with the grand jury, in violation of Pa.R.Crim.P. 209, when that body was deciding whether or not to indict appellant. Appellant's claim is devoid of any support in the record, his claim is thus without merit.

■ Appellant next claims that trial counsel was ineffective for failing to file a motion to quash the indictments for failure of the Commonwealth to comply with Pa.R.Crim.P. 1100. The facts are as follows. Appellant was arrested on October 15, 1974, with the 180-day time period expiring on April 13, 1975. On April 9, 1975, appellant moved for a continuance because his attorney was tied up with a two-week trial in Chicago. The court then explained to appellant that if the continuance was granted, he would not be tried within the time period called for by Rule 1100. Appellant told the court he understood and was willing to waive the right to be tried within 180 days. The court accepted appellant's waiver and set the trial date for May 27, 1975. Further, on April 10, the Commonwealth petitioned for an extension of time pursuant to Rule 1100(c), alleging that despite all due diligence on the part of the Commonwealth, trial could not commence on or prior to April 13, 1975. The court granted the Commonwealth's petition and extended time for trial until May 27, 1975. Under these facts, a motion to quash would have been fruitless and counsel was not ineffective for having failed to file the motion. See *Commonwealth v. Coleman*, 477 Pa. 400, 406–07, 383 A.2d 1268 (1978).

Appellant next argues that trial counsel was ineffective for failing to include in written post-verdict motions that the trial court had erred in refusing appellant's pretrial motion to suppress a silencer found in appellant's apartment. The facts are as follows. Following the homicides, police in Upper Merion were unable to come up with any suspects during their initial investigation. They first discovered four empty 7.65 cartridge cases. Sometime after the homicides,

they found a 7.65 millimeter Beretta automatic pistol in heavy brush, some three to four hundred yards from the scene of the shootings. An empty clip was found near the pistol. Ballistics tests revealed the gun to be the murder weapon. Further, the outside of the gun's muzzle had been machined and threaded to accommodate a silencer. Further investigation inside the Maile residence by police turned up $15,000 in cash in a second floor closet. None of the aforementioned information was given to the news media which was covering the shootings.

On Monday evening, October 14, 1974, Upper Merion Police received a call from the Philadelphia Police, who indicated that one of their informants had important information about the unsolved double murders. Lt. Frank Ferlick and Detective William O'Brien of the Upper Merion Police met with Philadelphia Police officers and the informant at the Police Administration Building. During a two-hour interview, the informant told Ferlick and O'Brien that an individual, Sigisfredo Ortiz, had admitted to him participation in the robbery. The informant further stated that an individual known only as "Cubano" was also involved. The informant then gave police information about the shootings that was known only by police and the perpetrators of the crime. The informant also told police that Ortiz lived at 1510 North 8th Street and "Cubano" lived at the second floor apartment at 1513 North 8th Street, both in Philadelphia. The Philadelphia Police also told Ferlick and O'Brien that they had used this informant extensively in the past and his information had led to over twenty-five arrests and convictions.

The police and the informant then proceeded to North 8th Street. The informant went to both apartments and found both suspects at home. However, Ortiz and "Cubano" (appellant) evidently told the informant that they were leaving early the next morning. After the informant took a polygraph examination which indicated no deception on his part, the police decided they had probable cause to arrest the pair.

However, as no magistrate was available to issue a warrant, the police proceeded to North 8th Street without a warrant.

A group of officers went to 1513 North 8th Street to arrest appellant. After knocking on the door and announcing their presence, police testified that a female inside the apartment refused to open the door. After approximately 30 seconds, the police broke down the door. Once inside, Officer William Daiss saw an individual (appellant) running into the kitchen, where he was apprehended by Daiss. While there, Daiss noticed a silencer sitting on a shelf in an open pantry. Rather than immediately seizing the silencer, Daiss secured the kitchen until another officer returned with a search warrant.

Appellant believes that, on these facts, the court should have suppressed the silencer and that since counsel failed to include this issue in written post-verdict motions, he was denied the effective assistance of counsel. We disagree.

In *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), the United States Supreme Court stated: "objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence." (Emphasis added.) The pivotal question is thus: Did Officer Daiss and his brother officers have the right to arrest appellant in the apartment, for if they did, Daiss was clearly justified in preventing appellant's escape by chasing him into the kitchen where he saw the silencer. Further, whether police had the right to arrest appellant depends on whether sufficient probable cause existed to justify the arrest.[3]

■ The information provided to police by the confidential informant, if believed, gave the officers probable cause to arrest appellant, as the informant told police that appel-

**3.** Appellant does not challenge his arrest on the grounds that it was effectuated without a warrant in his residence. See *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978).

lant had, in fact, committed the crime in question. Thus, if the informant could be considered reliable, the police had probable cause to arrest appellant. We believe that the informant was reliable, thus giving the officers probable cause to arrest appellant.

 Instantly, the informant told police that he received the information from one of the participants in the crime. Further, the informant was able to give police specifics about the crime which only the investigating officers and the participants could have known. Included in this category are the facts that a silencer was used, what kind of weapon was used, where the weapon had been discarded, and that a large amount of money could be found in the house. Further, the Philadelphia Police who had used the informant in the past told the Upper Merion officers that prior information supplied by this informant had led to arrest and conviction in at least twenty-five instances. In light of all of this, the officers were justified in believing the informant to be reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Thus, the police had probable cause to arrest appellant. Further, Officer Daiss discovered the silencer in plain view while effectuating a valid arrest, thus allowing seizure of the silencer. Counsel was not ineffective for failing to include this issue in post-verdict motions.

 Appellant next argues that appellate counsel was ineffective[4] for failing to withdraw from the case after being requested to do so by appellant. Appellant's contention, however, is without merit as appellate counsel requested permission from this court to withdraw, but permission

---

4. In his *pro se* brief, appellant alleges that appellate counsel was ineffective for failing to raise in his brief all of those issues previously discussed where appellant alleged ineffectiveness on the part of trial counsel. However, as we did not find ineffectiveness on the part of trial counsel, we likewise find no ineffectiveness of appellate counsel for failing to include these baseless issues.

was refused. Instead, appellant was allowed to personally file additional briefs in support of his appeal.

■ Appellant finally alleges that he was subjected to double jeopardy when the trial court increased his sentence. The facts are as follows. As previously mentioned, appellant was found guilty of two counts of murder of the second degree, burglary, criminal attempt and weapons offenses. The following sentences were imposed on July 22, 1976:

"[THE COURT]: On the four bills of indictment the sentence is as follows: On Criminal Action 3981.2 of 1974 [two counts of murder in the second degree]; and now, July 22, 1976, the Defendant appearing in open court with counsel, is sentenced to pay the costs of prosecution and undergo imprisonment for not less than ten years nor more than twenty years in such state correctional institution as shall be designated by the Deputy Commissioner for Treatment, Bureau of Corrections, and sent to the Correctional, Diagnostic and Classification Center at Graterford for this purpose. This commitment is to date from October 15, 1974.

"On the burglary; on Criminal Action 3981.5 of 1974, the same sentence is imposed as on Criminal Action 3981.2, and to run consecutive therewith.

"On Criminal Action 3985.6, which is the attempt, and 3985.7, which is the violation of the Uniform Firearms Act, sentence is suspended on payment of the costs of prosecution by reason of the sentence imposed on 3981.2 of 1974.

"Accordingly, the two sentences add up to a twenty to forty year sentence, with credit for the period from October 15, 1974."

On August 4, 1976, appellant was again taken before the sentencing court and the following occurred:

"THE COURT: All right, gentlemen, to get right to the point—

"Mr. Tome, on July 22nd of 1976, I sentenced you on Criminal Action No. 3981.2 of 1974, and imposed a sen-

tence of ten to twenty years. That was in accordance with the Crimes Code, or the Pennsylvania statute that applied originally.

"It came to my attention after I imposed sentence on you that the Crimes Code had been amended, and I am obliged now to impose a life sentence in any case where there is conviction for second degree murder. Accordingly, I have no choice but to impose a life sentence for that particular offense, once you are convicted.

* * * * * *

"On Criminal Action 3981.2 of 1974—

"And now, this 4th day of August, 1976, the defendant, appearing in open court with counsel, is sentenced to undergo imprisonment for life in such state correctional institution as shall be designated by the Deputy Commissioner for Treatment, Bureau of Corrections, and sent to the Correctional, Diagnostic and Classification Center at Graterford for this purpose. The commitment to date from October 15 of 1974.

"This amends sentence entered on July 22 of 1976.[5]

"On Criminal Action 3981.5 of 1974—

"The defendant, appearing in open court, with counsel, is sentenced to undergo imprisonment for not less than ten nor more than twenty years, in such state correctional institution as shall be designated by the Deputy Commis-

5. In all of the briefs involved, the parties state that appellant was sentenced to two consecutive life sentences for the two murders. The trial court, however, stated at the resentencing:
 "THE COURT: He was convicted of two counts of murder in the second degree, on the same bill.
 "MR. NARDUCCI [Defense counsel]: And they were both embodied in that same bill:
 "THE COURT: On the same bill. Yes. And, accordingly, I only imposed one sentence. It being my understanding that if there is only one bill and the charge is multiple murders, of course, in that case I am only authorized to sentence on the one bill. Accordingly, I have only sentenced on the one bill.
 "MR. NARDUCCI: I think the life sentence that Your Honor just imposed encompasses both verdicts on the two homicides?
 "THE COURT: Correct."

sioner for Treatment, Bureau of Corrections, and sent to the Correctional, Diagnostic and Classification Center at Graterford for this purpose. This sentence to run consecutively to the sentence imposed at 3981.2 of 1974.

"This amends the sentence entered on July 22nd of 1976.

"With respect to the other two bills of indictment, 3981.6, and 3981.7 of 1974, wherein sentence was suspended on July 22nd of 1976, the same sentence will remain— sentence remains suspended on those two bills.

\* \* \* \* \* \*

"MR. NARDUCCI: Now, am I correct in assuming that, in effect, what Your Honor has done is merely change the ten to twenty sentence on the two homicides to a life sentence today?

"THE COURT: That is precisely what I have done."

Appellant claims that the increase in the sentence on the murder indictment constitutes double jeopardy. We agree.

In a series of cases, this court has held that once a criminal defendant begins to serve a sentence, any increase in that sentence violates the double jeopardy clause of the United States Constitution. *Commonwealth v. Brown*, 455 Pa. 274, 314 A.2d 506 (1974); *Commonwealth v. Allen*, 443 Pa. 96, 277 A.2d 803 (1971); and *Commonwealth v. Silverman*, 442 Pa. 211, 275 A.2d 308 (1971).

The Commonwealth, however, argues that these cases are inapplicable because the Legislature has mandated a life sentence for all convictions of murder of the second degree. The Commonwealth thus believes that the court was compelled by the Legislative mandate to correct the error in the original sentence. Further, the Commonwealth argues that compliance with the mandatory sentencing proceedings [6] set forth by the Legislature overrides the double jeopardy

6. Appellant also argues that the mandatory sentencing provisions are unconstitutional. Because of our resolution of the double jeopardy issue, we need not reach this issue.

clause. We disagree. As we stated in *Commonwealth v. Brown*, supra, 455 Pa. at 277–78, 314 A.2d at 508–509:

"More important for our resolution of the instant case, however, is our decision in *Commonwealth v. Allen*, supra, wherein we held, inter alia, that even an increase in sentence which is merely designed to correct an inadvertent judicial mistake must be scrutinized as carefully as an increase which results from a reconsideration of sentencing factors or from a judicial change of mind. The Commonwealth would dispute this reading of *Allen*, however, since it feels that an increased sentence to correct a 'slip of the tongue' was there approved. While it is true that we noted factors which negated a 'slip of the tongue' theory in that case, we never indicated that the establishment of such a 'slip' would have altered our result. On the contrary, we there expressed our 'agreement with those jurisdictions holding there is no exception to Lange in the situation where the increase is allegedly designed to reflect the judge's true intent . . . ' 443 Pa. at 104, 277 A.2d at 807. We then concluded our discussion with the following language: 'Lastly, we are of the opinion that such alleged inadvertence cannot be tolerated as a matter of public policy. As best stated by the Second Circuit, "[t]he possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." *United States v. Sacco*, 367 F.2d [368] at 370.' 443 Pa. at 105, 277 A.2d at 807. In light of the above principles enunciated in *Allen*, we must hold that the modification of sentence in the present case, having occurred after the appellant was returned to prison pursuant to a commitment order, violated the federal and state constitutional guarantees against double jeopardy."

Judgment of sentence at No. 64 January Term, 1977 is vacated and the case is remanded for reimposition of the original judgment of sentence, which is then affirmed. Judgment of sentence at No. 334 January Term, 1977 is affirmed.

NIX, J., files a dissenting opinion.

LARSEN, J., files a dissenting opinion.

NIX, Justice, dissenting.

For the reasons enunciated in my concurring and dissenting opinion in *Commonwealth v. Brown*, 455 Pa. 274, 280, 314 A.2d 506 (1974) (Nix, J., concurring and dissenting), I cannot accept the majority's conclusion that the trial judge's imposition of a life sentence upon appellant violates the double jeopardy clause of the United States Constitution. The trial judge's initial sentence, ten to twenty years imprisonment, on the second degree murder convictions was a direct contravention of the then applicable express statutory grant of sentencing power to the judiciary. *See*, 18 Pa.C. S.A. § 1102(b) (Supp.1978–79), and as such this initial sentence was a legal nullity. Because the first sentence was illegal, appellant in effect remained unsentenced until August 4, 1976 when the trial judge sentenced appellant to life imprisonment in accordance with the legislative mandate. *See id.* It was at this time that appellant received his first *legal* sentence, and I remain convinced that the protection embodied in the Double Jeopardy Clause does not prohibit a sentencing court from modifying an illegal sentence in order to bring it into compliance with a statutory sentencing scheme which was in effect when the illegal sentence was announced.

LARSEN, Justice, dissenting.

I dissent; the trial judge had no authority or power to sentence the defendant to a prison term of ten to twenty years for the crime of murder of the second degree. The offense requires, by statute, a mandatory life imprisonment sentence. The sentence of ten to twenty years was a nullity. Thus the double jeopardy clause problem cited by the majority in *Commonwealth v. Brown*, 455 Pa. 274, 314 A.2d 506 (1974) does not arise.

I would affirm the judgment of sentence.