419 A.2d 1261

**COMMONWEALTH of Pennsylvania**

**v.**

**John CHAMBERLAIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed May 2, 1980.

504

506

Robert L. Beggs, Coatesville, for appellant.

Charles P. Mackin, Assistant District Attorney, Couders-port, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

This is an appeal from a judgment of sentence. Appellant, John Chamberlain, and a co–defendant, Susan Davis, were convicted in a non–jury trial of possession of a controlled substance with intent to deliver. Following conviction post–trial motions were filed by trial counsel, asserting that the verdict is contrary to the evidence and demanding a new trial because of errors made by the suppression court. Defendant's counsel withdrew and new counsel filed supplemental motions raising the issue of ineffectiveness of counsel. The court below entered an order dismissing the motions and from this order Chamberlain appeals.

Specifically, the appellant, Chamberlain, claims: (1) his trial counsel was ineffective due to dual representation in light of a conflict of interest between defendants; (2) counsel was ineffective due to his failure to raise all available issues to challenge the legality of the search and seizure; and (3) the court below erred by inferring an intent to deliver a controlled substance from the quantity possessed.

The facts are as follows: Chamberlain and Davis resided in a combination hotel and store in Conrad Village, Potter County. The building is known locally as the "Conrad–Hilton" and consists of a store at the eastern corner of the structure, an unpartitioned living area on the remainder of the first floor, and approximately ten hotel–type rooms on the second floor. The structure sits on a large plot of land.

On August 23, 1977, Trooper Cogley of the Pennsylvania State Police received information from a resident of the Conrad area that there appeared to be a pot or plant of marijuana on the rear porch roof of Chamberlain's residence. Without entering the property Trooper Cogley observed the plants and identified them as marijuana. The trooper returned on August 27, 1977, to check the scene and again observed the pot of plants. Two days later a search warrant was issued but was not executed since Chamberlain was not at home. The suspected marijuana was still in view at this time. The following day four officers returned to the "Conrad–Hilton" with the warrant. Again no one was home. The officers entered the building and began to search. The entire living unit on the first floor was searched and the following items seized and catalogued:

1. Five roach clips.
2. Poppy seeds in a glass mustard jar.
3. A pound tin containing ½ lb. of marijuana.
4. Cigarette papers.
5. A bronze hashish pipe.
6. Seven marijuana plants (1 lb.) in a blue metal pot.
7. 32 cut marijuana plants (9½ lbs.).

Chamberlain and Davis returned during the course of the search and were placed under arrest. They were charged with possession with intent to manufacture or deliver a controlled substance.

After hearing a motion to suppress evidence, the suppression court ruled that the evidence was properly seized. Chamberlain and Davis were represented by the same counsel in a non–jury trial.

I

■ Appellant Chamberlain argues that his counsel was ineffective in that counsel represented both Chamberlain and Davis despite the existence of a conflict of interest between the co–defendants. Although the issue of ineffectiveness of counsel was not raised below, it may be raised by

substitute counsel on direct appeal. *Com. v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

In reviewing a claim of ineffective assistance of counsel the standard to be applied is that set forth in *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 604–5, 235 A.2d 349, 352 (1967), as follows:

[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. (emphasis in original)

Ineffectiveness of counsel may be found where dual representation involves a conflict of interest. *Com. v. Wilson*, 429 Pa. 458, 463, 240 A.2d 498, 500 (1968). However, dual representation does not by itself amount to a conflict of interest. *Com. v. Wilson, supra* ; *Com. v. Myers*, 419 Pa. 139, 213 A.2d 356 (1965), *cert. denied*, 386 U.S. 1013, 87 S.Ct. 1361, 18 L.Ed.2d 445 (1967). The defendant must at least show the possibility of harm in order to make the dual representation rise to a true conflict. *Com. v. Wilson, supra.* The mere existence of such a conflict vitiates the proceedings, even though no *actual* harm results. *Com. ex rel. Whitling v. Russell*, 406 Pa. 45, 176 A.2d 641 (1962). *See also Com. v. Breaker*, 456 Pa. 341, 318 A.2d 354 (1974).

The appellant argues that a conflict of interest did exist in this dual representation and points to the allegedly incriminating testimony of co–defendant Davis as support for this. Specifically, on direct examination Davis testified to the following which appellant claims was contrary to his interest:

1. Chamberlain had sole use of the portion of the dwelling where the marijuana was discovered.

2. Chamberlain has almost exclusive control of the bedroom downstairs where marijuana and a pipe were found.

3. Chamberlain owned the marijuana discovered and seized.

4. No other occupants were in the dwelling at the time of the search and seizure.

5. Chamberlain was planning to sell roach clips in his store.

Chamberlain argues that under the standard announced in *Com. ex rel. Whitling v. Russell, supra,* this testimony of his co–defendant sufficiently establishes a conflict of interest and, that in allowing Davis to so testify at the joint trial, his trial counsel was ineffective.

However, a review of the entire record discloses that the testimony of Susan Davis, while undeniably asserting Chamberlain's ownership of the marijuana, is not contrary to Chamberlain's interests. According to the testimony of Corporal Donald Young, who executed the search warrant and arrested the co–defendants, Chamberlain, after reading the inventory list of items seized from the "Conrad–Hilton", stated that:

> . . . [the officers] had gotten all [the marijuana] he had on the list. He also stated he does not sell marijuana. He smokes it himself. He does give it to friends. He does not sell it. He stated that the marijuana was all his and did not belong to the accused Davis.

This testimony was heard without objection from the defendant. Chamberlain did not testify at the trial.

In view of this it cannot be said that Davis relied on a defense which was antagonistic to Chamberlain's. In fact, Davis' testimony was less damaging than Chamberlain's statement in that Chamberlain stated he transferred the marijuana to others. As to Davis' testimony that Chamberlain had sole use of the portion of the dwelling where the marijuana was found and that there were no other occupants of the building at the time of the search and seizure, these statements are quite consistent with Chamberlain's admission, quoted above, that the marijuana was "all his". Finally, Davis disclosed that Chamberlain planned to sell roach clips in his store. The sale of roach clips, while it may be considered as circumstantial evidence contributing to a finding of guilt, is not illegal. Also, Davis could not have

been establishing her own innocence at Chamberlain's expense since she was equally involved. According to her testimony she received the roach clips and sold them to Chamberlain for the purpose of selling them in his store.

Nor can it be said that counsel abandoned his representation of Chamberlain. Because of the strength of Commonwealth's evidence of possession—the amount of marijuana found as well as Chamberlain's admission—it would not be an unreasonable trial tactic to concede the possession in order to rebut the more serious charge of possession with intent to deliver or manufacture. Therefore, since the appellant has failed to show that a conflict of interest existed, the claim of ineffectiveness of counsel in this regard must fail. The fact that one of the represented parties has a stronger defense than the other does not create a conflict of interest.

## II

Appellant Chamberlain argues that his trial counsel was ineffective due to his failure to raise all available issues to challenge the legality of the search and seizure. Chamberlain attacks the search and seizure on three grounds.

First, he claims that there was no probable cause to issue a search warrant for a building when the suspected contraband was observed only on a rear porch roof. The officer who obtained the search warrant made the following statement of probable cause:

Information was received by this officer from a private citizen on the 23 of August 1977 and on 27 of August 1977 that plants believed to be marijuana growing on the rear porch roof of said building. This officer checked the scene at 8 p. m. on Aug. 23, 1977 and viewed the suspected plants from an adjacent property located at the rear of the building and again on Aug. 29, 1977 and it is believed by this officer that these plants are marijuana. This officer did at no time enter the property of the suspect. The alleged marijuana plants were believed to number approximately 200 and were growing in a tub–like container setting on the roof of the establishment.

Certainly the fact that a tub containing approximately 200 marijuana plants was found on the porch roof would be sufficient probable cause to issue a search warrant for the building. A reasonable person could conclude that the planting and nurturing of such a large number of plants would most likely be accomplished in the building itself. Therefore, appellant's argument is without merit. The facts of this case are similar to those of *In re Eckert,* 260 Pa.Super. 161, 393 A.2d 1201 (1978). There police officers found empty .22 cal. shell casings on a roof of a building while investigating a sniper attack in the vicinity. The discovery of these casings was held to be probable cause for searching the building. 260 Pa.Super. 161, 393 A.2d at 1203–4.

■ Secondly, appellant claims that the search warrant authorized the search of the Conrad store and not the entire structure. The description of the premises given in the search warrant states:

Conrad store in Conrad, of the East fork district in Eulalia Township, R.D. 1, Austin, Pa. said building is a two–story structure painted white, located on the north side of Leg. route 52001.

This description is sufficiently specific to authorize the search of the building. In a similar situation this court, in *Com. v. Biancone,* 249 Pa.Super. 34, 375 A.2d 743 (1977), held a search warrant's description of defendant's house in a rural area where the house, in addition to its proximity to a particularly named road, was described as located in a specific township to be sufficiently specific and the fact that it contained some inaccuracies did not vitiate the warrant. Although the warrant in this case identifies the structure as the Conrad store, the description in the search warrant was sufficient since the officer executing the warrant could with reasonable effort conclude that the intended place was the two–story structure. *U. S. v. Yatsko,* 23 F.Supp. 879 (M.D. Pa.1938).

■ Third, appellant claims his trial counsel was ineffective because he failed to argue that the search warrant for

the entire building was defective due to the existence of separate living units therein. According to the testimony at trial the second floor of the dwelling contained ten hotel–type rooms which were rented seasonally. Both the United States and Pennsylvania Constitutions prohibit the issuance of a search warrant for an entire building containing separate living units. *Com. v. Johnson*, 229 Pa.Super. 182, 185, 323 A.2d 26, 28 (1974); *Com. v. Copertino*, 209 Pa.Super. 63, 224 A.2d 228 (1966). Thus, normally probable cause is required to search each unit. However, if there is cause to believe the premises covered by the warrant are being used as a single unit, a warrant directing the search of more than one unit is valid. *See Com. v. Copertino, supra.*

In *Copertino* this Court invalidated a search warrant authorizing the search of a multiple tenant dwelling. The Court noted existence of two outside doors in front of the house indicating its character as a two–unit dwelling, and distinguished that situation from those cases [1] where there were no indications that the house to be searched was anything but a single family dwelling. 209 Pa.Super. at 68–9, 224 A.2d at 230.

In the instant case Trooper Cogley, who investigated the scene and subsequently obtained the search warrant, testified that he had no knowledge of the premises ever being used as a hotel. The search warrant was issued under the name of John Chamberlain since it was Cogley's information that the appellant was in control of the building and was in residence there with his girl friend. Therefore, since there was no reason to believe the structure contained more than one living unit, the search warrant was not defective.

Because the arguments set forth above as to the propriety of the search and seizure are without merit, appellant's counsel cannot be said to have been ineffective. *Com. v. Tome*, 484 Pa. 261, 398 A.2d 1369 (1979); *Com. v. Young*, 264 Pa.Super. 432, 399 A.2d 1127 (1979).

1. The court distinguished from *Copertino* the case of *United States v. Santore*, 290 F.2d 51 (2d Cir. 1960); *United States v. Poppitt*, 227 F.Supp. 73 (D.C.Del.1964).

## III

Finally, Chamberlain claims there was insufficient evidence upon which to convict. Specifically, he argues that the lower court erred by inferring intent to deliver a controlled substance from the quantity possessed. In reviewing the sufficiency of the evidence we view the evidence in the light most favorable to the Commonwealth as the verdict winner, accepting as true all the evidence and reasonable inferences therefrom upon which if believed the jury could properly have based its verdict. *Com. v. Yost*, 478 Pa. 327, 386 A.2d 956 (1978).

In *Com. v. Santiago*, 462 Pa. 216, 224, 340 A.3d 440, 444 (1975), the Pennsylvania Supreme Court cited with approval *United States v. King*, 485 F.2d 353 (10th Cir. 1973) which held:

> The "intent" with which a controlled substance is possessed is generally established through circumstantial evidence and in this regard we have held that the quantity of the drug possessed is a circumstance which may permit the inference that the possessor had an intent to sell, deliver or otherwise distribute.

485 F.2d at 356–7. The court in *Santiago* concluded that such factors as the quantity of the drugs, their street value and the existence of drug–related paraphernalia can be considered when determining the issue of intent to deliver, 462 Pa. at 223, 340 A.2d at 444.

Here during the search of Chamberlain's dwelling a pound of marijuana plants was found in the middle of the central living room floor, one–half pound was found in Chamberlain's bedroom, and over nine pounds were found drying on clothes lines. Also cigarette papers, a pipe and roach clips were discovered. Testimony disclosed that Chamberlain planned on selling the roach clips in his store. In view of this the lower court stated:

> [T]he existence of over ten pounds of marijuana and several roach clips leads unmistakably to the presumption that defendants intended to sell the marijuana, remembering that defendant Chamberlain operated a store at the

"Conrad–Hilton" and that the roach clips were sent to defendant Davis for sale at the store.

Thus, relying on *Santiago* the lower court properly found these facts sufficient to infer possession with intent to deliver. Therefore, we affirm.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I believe that a conflict of interest existed in this case. Appellant's and the co–defendant's defenses were in some measure inconsistent, and I am persuaded that counsel, caught in the attempt to represent both of them, neglected appellant's case in favor of the co–defendant's.

In *Commonwealth v. Breaker*, 456 Pa. 341, 344–345, 318 A.2d 354, 356 (1974), the Supreme Court stated:

Our dual representation cases make several principles clear. First, "[i]f, in the representation of more than one defendant, a conflict of interest arises, the mere existence of such conflict vitiates the proceedings, even though no *actual* harm results. The potentiality that such harm *may* result, rather than that such harm *did* result, furnishes the appropriate criterion." *Commonwealth ex rel. Whitling v. Russell*, 406 Pa. 45, 48, 176 A.2d 641, 643 (1962). Second, a defendant must demonstrate that a conflict of interest actually existed at trial, because "dual representation alone does *not* amount to a conflict of interest." *Commonwealth v. Wilson*, 429 Pa. 458, 463, 240 A.2d 498, 501 (1968); *Commonwealth ex rel. Corbin v. Myers*, 419 Pa. 139, 213 A.2d 356 (1965), cert. denied, 386 U.S. 1013, 87 S.Ct. 1361 [, 18 L.Ed.2d 445] (1967). Third, "[t]o make the dual representation rise to a true conflict, appellant need not show that actual harm resulted, . . . but must at least show the possibility of harm . . .." *Commonwealth v. Wilson, supra* [429 Pa.] at 463, 240 A.2d at 501. Fourth, appellant will satisfy the requirement of demonstrating possible harm, if he can show, inter alia,

"that he had a defense inconsistent with that advanced by the other client, or that counsel neglected his case in order to give the other client a more spirited defense." Id. Accord, *Commonwealth v. Cox*, 441 Pa. 64, 69, 270 A.2d 207, 209 (1970) (plurality opinion).[2]

In *Commonwealth ex rel. Whitling v. Russell, supra,* two brothers accused of the same crime were represented by the same counsel at trial. Finding a "highly prejudicial" conflict of interest, 406 Pa. at 49, 176 A.2d at 643, the Court stated:

One of the most important factors in a criminal trial is the attitude of the defendant's counsel and often the strength of the defendant's cause, unfortunately, is judged and gauged by the ability demonstrated by defendant's counsel. We cannot say that counsel in the instant case was not effective. But could he not have been more effective and more able to utilize the evidence if he had not been burdened by the chore of defending two defendants whose positions were inconsistent and at variance? Of necessity, counsel in the instant case had to temper his strategy and tactics to a middle–of–the–road position. . . . The very purpose of the rule which prohibits an attorney from representing conflicting interests is to preclude such an attorney from putting himself in a position where he may be required to choose between conflicting duties or to be led to an attempt to reconcile conflicting interests rather than to enforce, to their full extent, the rights of the party whom he should alone represent: 7 C.J.S., Attorney and Client, § 47.

*Id.*

The majority suggests that the principles evoked in *Breaker* and *Russell* do not apply to this case because appellant did not deny the co–defendant's testimony implicating him but rather confirmed it in his statement to the police after he was arrested. The majority notes that the co–defendant testified to the following:

1. Chamberlain [appellant] had sole use of the portion of the dwelling where the marijuana was discovered.

2. Chamberlain has almost exclusive control of the bedroom downstairs where marijuana and a pipe were found.

3. Chamberlain owned the marijuana discovered and seized.

4. No other occupants were in the dwelling at the time of the search and seizure.

5. Chamberlain was planning to sell roach clips in his store.

Slip op. at 1264.

The majority also notes that in his statement, as testified to by one of the arresting officers, appellant said:

. . . [the officers] had gotten all [the marijuana] he had on the list. He also stated he does not sell marijuana. He smokes it himself. He does give it to friends. He does not sell it. He stated that the marijuana was all his and did not belong to the accused Davis.

Slip op. at 1264.

Initially, it should be noted that the majority overstates the case. Contrary to what the majority says, the codefendant's testimony was not "less damaging" to appellant than appellant's statement. Slip op. at 1264. The co–defendant's testimony that appellant was planning to sell roach clips in his store went well beyond appellant's statement, for it at least implied, if it did not expressly say, that appellant was a dealer in marijuana, a charge that appellant denied. Although the Commonwealth need not prove that appellant had a pecuniary motive in transferring a controlled substance, in order to convict him under the Drug, Device and Cosmetic Act, 35 P.S. § 780–113(a)(30) (Purdon's 1977), *Commonwealth v. Metzger*, 247 Pa.Super. 226, 372 A.2d 23 (1977), testimony that appellant was a dealer was necessarily damaging to appellant's case.

The majority's more serious error, however, is in its application of the law. The majority states that "it [cannot] be said that counsel abandoned his representation of [appellant]." Slip op. at 1264. Whether there was "aban-

don[ment]" is not the point. The course of the trial indicates that "counsel neglected [appellant's] case in order to give the other client a more spirited defense." *Commonwealth v. Wilson, supra,* 429 Pa. at 463, 240 A.2d at 501. Counsel made no attempt either to suppress appellant's statement to the police, or to impeach appellant's co–defendant's testimony. Since the co–defendant's testimony exonerated her, one can understand why counsel, *as her counsel,* did not attempt to impeach her. It is not apparent, however, why counsel, *as appellant's counsel,* did not attempt to impeach her. The majority rationalizes counsel's inactivity on behalf of appellant by surmising that counsel's trial strategy was to concede that appellant possessed the marijuana in order to rebut the more serious charge of possession with intent to deliver or manufacture. Slip op. at 1264. If that was counsel's strategy, it was surely irrational, given the amount of marijuana found in appellant's premises. A far more likely explanation of counsel's conduct is that he had decided that there was not much he could do for appellant, and, while not quite "abandoning" appellant, nevertheless neglected him, devoting most of his efforts to achieving the exoneration of appellant's co–defendant. In *Commonwealth v. Johnson,* 223 Pa.Super. 307, 299 A.2d 367 (1973), we stated: "Where it appears that counsel's main objective is to exonerate one of his clients through the exculpatory testimony of another client, the rule of *Whitling* is clearly invoked and the proceedings vitiated because of the conflict." This is just such a case.[1]

I should grant appellant a new trial.

---

1. I should like to reiterate that many of the dangers of dual representation would be cured if the trial judge were required to hold a colloquy with the defendants and their counsel before beginning the trial. *See Commonwealth v. Bracero,* 262 Pa.Super. 189, 396 A.2d 709 (1978) (Dissenting Opinion), *allocatur granted,* April 11, 1979. Unless a pretrial colloquy is made mandatory, the trial judge cannot be certain that counsel has lived up to his professional obligation to "explain fully to each client the implications of common representation and [to] accept or continue employment only if the clients consent." ABA Code of Professional Responsibility, EC 5–16 (1969). Furthermore, to make a pre–trial colloquy mandatory would encourage judicial efficiency, for potential conflict of interest problems

would be identified in time to take remedial measures without adversely affecting the trial. Finally, and most importantly, a colloquy will make defendants better aware of the ramifications of dual representation.