491 A.2d 851

**In re Search Warrant B–21778 Robert GARTLEY, Sr.**

**Appeal of COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued Aug. 29, 1984.

Filed April 4, 1985.

Petition for Allowance of Appeal Granted Sept. 16, 1985.

354

Richard A. Linzer, Pittsburgh, for Commonwealth, appellant.

John F. Hooper, III, Pittsburgh, for appellee.

Before ROWLEY, JOHNSON and HESTER, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

In this case of first impression, we address the propriety of the use of a search warrant by agents of the Attorney General's Office to obtain business records transferred to an attorney's possession by a client suspected of criminal wrongdoing. After affording careful consideration to the arguments presented here, we hold that the office of an attorney not suspected of criminal activity is not immune from a search authorized by a particularized warrant supported by probable cause.

In February of 1982, an investigation by the Medicaid Fraud Control Section of the Attorney General's Office into an unlawful diversion by hospital employees of funds received from the sale of silver "flake" and x-ray film was commenced. Shortly thereafter, investigators interviewed appellee, Robert J. Gartley, Sr., in connection with this scheme. Gartley indicated that he was in the business of buying and selling old x-ray film for its silver content, and provided the names of hospitals with which he did business. Gartley named five Western Pennsylvania hospitals to which he issued checks in payment of the film to persons other than the hospital administrators. Subsequently, Attorney James Victor Voss, of the law firm of Meyer, Unkovic and Scott in Pittsburgh, notified the investigators that he was counsel for Gartley.

On July 19, 1982, the investigators obtained a search warrant from a Westmoreland County District Justice for Gartley's home/office. At the time execution of the warrant was attempted, Gartley was not home. However, Mabel Gartley, Mr. Gartley's wife, told the investigators that the records referred to in the warrant had been removed from the home, and taken to Attorney Voss' law office.

Attorney Voss confirmed that the records were in his possession. However, when asked to produce his client's records, Voss refused. Consequently, on July 21, 1982, the

investigators obtained a search warrant for Voss' office and the offices of Meyer, Unkovic and Scott. The warrant authorized the seizure of enumerated business records of Gartley related to his purchase of x-ray films from the hospitals involved in the investigation. In describing the premises to be searched, the warrant stated:

The office of Meyer, Unkovic and Scott, and James Victor VOSS, and their files, located at 1400 Frick Building, Grant Street, Pittsburgh, Pennsylvania 15219. The Frick Building being a 20-story office building.

Prior to execution of the warrant, Attorney John F. Hooper of Meyer, Unkovic and Scott orally requested injunctive relief from the Honorable Thomas A. Harper, Court of Common Pleas of Allegheny County. Thus, at some point during the search, the investigators received first a telephone message, and then a written order, from Judge Harper, temporarily enjoining further execution of the warrant. Judge Harper's written order also scheduled a hearing for the following morning, addressed to the propriety of the search.

Although no evidence was presented, Judge McGregor, by order dated August 5, 1982, granted appellee's motion to quash the warrant.[1] In so doing, Judge McGregor held that (1) the warrant failed to specify the area to be searched with reasonable particularity; (2) the search of an attorney's office is unreasonable absent a showing of the attorney's own wrongdoing, in light of the attorney-client privilege, and (3) the issuance of a search warrant here was not the proper procedure for obtaining the documents sought;

---

**1.** No *written* petition requesting injunctive relief was presented to Judge Harper; the controversy was initiated by *oral* request. This request resulted, ultimately, in a written order, issued *ex parte* and based solely on the representations of counsel for appellee and Attorney Voss. Moreover, although a hearing on the request for permanent injunctive relief was subsequently scheduled, appellee at that time filed a "Motion to Quash Search Warrant," which the Commonwealth was not given an opportunity to answer. *See Commonwealth v. Loesel,* 155 Pa.Super. 461, 38 A.2d 523 (1944) (Commonwealth entitled to a reasonable time to file an answer to a motion to quash a search warrant.) However, as the Commonwealth has not objected to the procedural course taken here, we do not pass on its propriety.

less intrusive means were available. This appeal by the Commonwealth, challenging each of the conclusions reached by Judge McGregor in granting the motion to quash, followed. We address each of these conclusions seriatim.

## I. THE WARRANT

In concluding that the warrant was not sufficiently particular, the trial judge focused on the quality of the description of the premises to be searched.[2]

 The Fourth Amendment of the United States Constitution requires that "... no warrants shall issue, but upon probable cause ... and particularly describing the place to be searched ..." Similarly, Article I, Section 8 of the Pennsylvania Constitution provides that "... no warrant to search any place ... shall issue without describing [it] as nearly as may be ..."[3] This requirement of particularity necessarily achieves definition according to the circumstances and nature of the items to be seized; a common sense approach must be utilized. As the Comment to Pa.R.Crim.P. 2005(c), which incorporates the constitutional particularity requirement, states in pertinent part,

> Paragraph [ ] ... (c) [is] intended to proscribe general or exploratory searches by requiring that searches be directed only toward the specific ... places set forth in the warrant. Such warrants should, however, be read in a common sense fashion and should not be invalidated by hypertechnical interpretations....

See also, Commonwealth v. Crawford, 320 Pa.Super. 95, 466 A.2d 1079 (1983); Commonwealth v. Barba, 314 Pa.Super. 210, 460 A.2d 1103 (1983); In Interest of Eckert, 260 Pa.Super. 161, 393 A.2d 1201 (1978). Thus, challenges to the specificity of the warrant have been rejected in cases where only a street address was supplied, or where a

2. The trial court found no error in the warrant's description of the specific *items* to be seized.

3. We note that the federal and state constitutions' particularity requirements have been deemed co-extensive. *Commonwealth v. Barba,* 314 Pa.Super. 210, 460 A.2d 103 (1983).

general description of the building to be searched was provided. *See e.g., Commonwealth v. Menginie,* 312 Pa.Super. 293, 458 A.2d 966 (1983) (Warrant authorizing search of "214 North Linden and its garage" upheld); *Commonwealth v. Chamberlain,* 277 Pa.Super. 503, 419 A.2d 1261 (1980) (Warrant permitting search of "Conrad Store In Conrad, of the East fork district in Eulalia Township, R.D. 1, Austin, Pa., said building is a two-story structure painted white, located on the north side of Leg. route 52001" sufficiently specific); *Commonwealth v. Mayfield,* 262 Pa. Super. 96, 396 A.2d 662 (1978) (Description of premises as "549 West 10th Street, Erie, Pennsylvania. A 2½ white aluminum sided multi-unit dwelling, the front door is on the east side of the residence facing north, the downstairs apartment. Has grey steps leading to the porch" sufficiently particular.) In each of these cases, this Court found that probable cause to believe that the premises as described were the scenes of criminal activity, or that evidence of a crime could be found therein, existed. *Cf., United States v. Busk,* 693 F.2d 28 (3d Cir.1982) (Warrant authorizing entry into all apartments in multi-dwelling house does not satisfy the Fourth Amendment's particularity requirement when probable cause has been shown for search of only one of them.) Where, then, the description provided is precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity.

█ In the instant case, neither Attorney Voss nor appellee contested the magistrate's finding of probable cause to search Voss' office, and the offices of the law firm with which he is associated, nor would such a contention have had merit. As averred in the affidavit in support of the warrant, both appellee and his wife informed the Commonwealth's investigators that all of the items listed in the search warrant had been transferred to the attorney's possession; the affiant further alleged that Attorney Voss

himself confirmed these statements. The mere fact that the search was directed only toward seizure of the records of one of Voss' clients is not dispositive. The investigators could reasonably assume that, as a member of the law firm, Voss would have access to many areas within the firm's office; an individual attorney would not be confined to his or her own office. Furthermore, apart from conversations with the Gartleys and Voss, the investigators had no legitimate means of gathering information relevant to limiting the scope of the warrant, prior to its execution. In light of the confidential nature of the firm's activities, the investigators could not browse through the firm, observing Voss' movements, particularly since he was not the target of the investigation. Since the Commonwealth's agents were provided with no additional information reasonably suggesting a narrower drafting of this aspect of the warrant, and had no means at their disposal for acquiring such information, the futility of greater specification is clear. Thus, we conclude that the description of the area to be searched here was not overbroad.[4] *See United States v. Lebovitz,* 506 F.Supp. 249 (W.D.Pa.1980), *aff'd on other grounds,* 669 F.2d 894 (3d Cir.1982), *cert. den.,* 456 U.S. 929, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982) (Warrant specifying only street address and city in which attorney's office was located did not violate Fourth Amendment's particularity requirement.)[5]

■■■ The manner in which a search is conducted is, of course, as vital a part of the inquiry as whether it was warranted at all. The Fourth Amendment proceeds as much by limitation upon the scope of governmental action as by imposing preconditions upon its initiation. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 899 (1968). *See also Commonwealth v. Eliff,* 300 Pa.Super. 423, 446 A.2d

---

**4.** Nor were any "facts" subsequently presented which would alter this conclusion, given that no evidentiary hearing was held.

**5.** In *Lebovitz,* the attorney himself was under indictment. This fact was not, however, dispositive to the determination of the sufficiency of the warrant's description, but rather, was relevant to a determination of probable cause.

927 (1982). Thus, the Commonwealth urges our consideration of "the record below" with respect to the attempted execution of the warrant, in ascertaining whether the description of the premises falls within constitutionally permissible limits. The scope of the warrant was restricted in *practical effect*, the Commonwealth argues, in that (1) initially, several requests that the materials be voluntarily surrendered were made, and (2) before it was interrupted, the search was limited to Attorney Voss' office and to a file, distinguishable in appearance from other visible files and bearing no name or other identifying mark. We may not, however, rely on these representations, given that no factual record was made in the trial court. Rather, the record contains only allegations made during the course of argument on the propriety of the warrant. Nonetheless, because the warrant is not impermissibly broad on its face, and there has been no finding that its aborted execution encompassed an unnecessarily broad area, we conclude that the trial court erred in characterizing the search thereby authorized as unconstitutionally overbroad.

## II. SEARCH OF AN ATTORNEY'S OFFICE

We turn, then, to the pivotal issue here: is the use of a search warrant a constitutionally permissible means by which to secure the business records of a client suspected of criminal wrongdoing from the office of a non-suspect attorney?

The essence of the Fourth Amendment to the federal constitution, and Article I, § 8 of the Pennsylvania Constitution, is reasonableness; these provisions provide protection against *unreasonable* searches and seizures. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); *Commonwealth v. Tann*, 500 Pa. 593, 459 A.2d 322 (1983); *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 452 A.2d 827 (1982). Hence, all Fourth Amendment requirements must be tempered by considerations of reasonableness under the circumstances. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726

(1963); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982). The determination of reasonableness of a search frequently involves balancing the intrusion on the individual's privacy interests against the government's need to conduct the intrusion. *Commonwealth v. Lapia,* 311 Pa.Super. 264, 457 A.2d 877 (1983), *rev'd on other grounds, Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

As noted earlier, there is no question that the warrant issued here is supported by probable cause. Moreover, we have concluded that a sufficiently specific description of the premises to be searched is found therein. We must decide, then, whether the search proposed was reasonable in light of the privacy interests asserted here—the attorney-client privilege, the work-product doctrine, client confidentiality, and the criminal defendant's constitutional right to counsel.

■■■■■ The attorney-client privilege, codified at 42 Pa. Cons.Stat. §§ 5916 and 5928, embodies the common-law privilege universally accepted as indispensable to an attorney's professional relationship with his client. Fundamentally, the privilege is designed to foster full communication between the attorney and client. *Commonwealth v. Hutchinson,* 290 Pa.Super. 254, 434 A.2d 740 (1981). The attorney can effectively fulfill his roles as counsellor, intermediary and advocate only if, assured of confidentiality, the client is wholly free to completely and candidly disclose all the facts, favorable or unfavorable, to him. In most jurisdictions, including Pennsylvania, the incorporation of the common-law rule into statute has not changed the essentials of the privilege. Thus, several prerequisites to assertion of the privilege remain. As Professor Wigmore summarizes the privilege,

> Where legal advice of any kind is ... sought from a professional legal adviser in his capacity as such ... the communications relating to the purpose ... made in confidence ... by the client ... are at his instance permanently protected ... from disclosure by himself or by the legal adviser ... except the protection may be waived.

8 Wigmore, Evidence §§ 2292 at 554 (McNaughton rev. 1961), quoted in *Commonwealth v. Maguigan,* 323 Pa.Super. 317, 470 A.2d 611 (1983). *See also* 79 Dick.L.Rev. 650 (1974–75). The attorney-client privilege is, then, somewhat limited in scope; it does not apply to pre-existing documents. Documents that could be subpoenaed from the client [6] or made the subject of a validly drawn search warrant for the client's home or office are likewise not enveloped by the privilege's protection merely by virtue of their transfer to an attorney. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718 (App.1983), *cert. denied,* — U.S. —, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). *See also, McCormick On Evidence,* § 89 (3d ed. 1984).

■■■ Similarly, the Code of Professional Responsibility prohibits an attorney's disclosure of his client's confidences and secrets. Disciplinary Rule 4–101 provides, in part,

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client, including his identity.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) a lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

6. This assumes the existence of no Fifth Amendment self-incrimination problems.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

CODE OF PROFESSIONAL RESPONSIBILITY, DR 4–101(B) and (C) (1974). As the Code defines "confidence" and "secret",

'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

CODE OF PROFESSIONAL RESPONSIBILITY, DR 4–101(A) (1974). Ethical Consideration 4–4 points out that the attorney-client privilege and the duty imposed by the Code are not identical.

The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept unlike the evidentiary privilege exists without regard to the nature or source of information or the fact that others share the knowledge.

CODE OF PROFESSIONAL RESPONSIBILITY, EC 4–4 (1974). Nonetheless, "in any analysis of the attorney-client privilege, we must recognize that our Code of Professional Responsibility provides strong support for the concept of a legally protected confidentiality for client attorney discourse." *Brennan v. Brennan*, 281 Pa.Super. 362, 370, 422 A.2d 510, 514 (1980). *See also Commonwealth v. Maguigan, supra.*

Additional safeguards for the communications between attorney and client are provided by the work-product doctrine, enunciated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). At its core, this doctrine

shelters the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely prac-

tical one, grounded in the realities of litigation in our adversary system.

*United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975), *quoted with approval in Lepley v. Lycoming Cty. Ct. of Com.Pl.,* 481 Pa. 565, 573, 393 A.2d 306, 310 (1978). Indeed, even in announcing the work-product rule, the *Hickman* Court recognized that work-product principles may not preclude discovery of *evidentiary* material.

> We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.

*Hickman v. Taylor, supra,* 329 U.S. at 511, 67 S.Ct. at 394, 91 L.Ed. at 462.

As is thus evident, the work-product doctrine is distinct from and broader than the attorney-client privilege, and is especially important in criminal cases. The interests of society and the criminally suspect in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each aspect of a case. As a result, Pa.R.Crim.P. 305 excludes "legal research ... records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the attorney for the Commonwealth or the attorney for the defense ..." from its mandatory discovery requirements. Pa.R.Crim.P. 305(G).

A criminal defendant's right to counsel, in all critical stages of the proceeding, guaranteed by the Sixth Amendment to the United States Constitution, and Article I, § 9 of the Pennsylvania Constitution, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Commonwealth ex rel. Santiago v. Myers,* 419 Pa. 326, 214 A.2d 206 (1965); *Commonwealth v. Brocco,* 263 Pa.Super. 51, 396

A.2d 1371 (1979), must also be weighed in determining the reasonableness of proceeding by a warrant in this context. Not only is effective assistance of counsel a constitutional mandate, it is also necessary to an adversary system of justice. Assuredly, counsel's assistance can be made safely and readily available only when the client is free from the apprehension of disclosure.

In balancing the competing interests in the instant case, it is essential to note exactly what the Commonwealth sought. As "Attachment A" to the search warrant indicates, the Commonwealth was interested in records of appellee's business transactions with five named hospitals. Mr. and Mrs. Gartley informed the investigating agents on July 19, 1982 that "all of the items sought on the search warrant were taken to the office of Attorney James Voss" following the agents' interview with Mr. Gartley on February 12, 1982.[7] The Commonwealth was not, then, seeking any of the attorney's personal memoranda or notes regarding conversations with his client but, rather, pre-existing documents. Thus, appellee may not invoke the protection afforded by the attorney-client privilege and the work-product doctrine.

Similarly, the search of his attorney's office would not have compromised appellee's constitutional right to counsel. The investigatory process is not a "critical stage" for Sixth Amendment purposes. *Commonwealth v. Brocco, supra.* In fact, in rejecting this contention, this Court, sitting *en banc,* noted,

> [W]ere we to adopt [the] contention that the right to counsel attaches whenever a party retains counsel to render legal advice regarding potential legal problems, the use of informants or other means of investigation would be significantly curtailed. In essence, it would permit a suspect to hide behind the sixth amendment

---

**7.** This statement was taken from the affidavit in support of the warrant.

cloak by the mere payment of a token retainer to a legal adviser. Accordingly, [this] contention is without merit. *Id.*, 263 Pa.Super. at 68, 396 A.2d at 1379–1380.

■■■■ We recognize that in the course of execution of the warrant issued here, truly confidential communications may be inadvertently examined by the inquisitive investigator. Yet we hold that appellee's interest in confidentiality may not be utilized to impede a legitimate, carefully circumscribed, criminal investigation. Although the Fourth Amendment places limits on the kinds of intrusions the government may make upon individuals and their property in gathering evidence, these limitations are not intended to encourage the concealment of evidence; they are designed to promote privacy and autonomy. Any intrusion into the private communications between Mr. Gartley and Attorney Voss during the execution of the warrant would be attributable to Mr. Gartley's own conduct, resulting directly from the transfer of the records and other documents to his attorney's care. Consequently, the use of Attorney Voss' office as a haven for evidence material to an ongoing criminal investigation does not place it beyond the reach of a proper search pursuant to a warrant issued on probable cause; we will not restrain the Commonwealth's efforts to obtain otherwise seizable evidence *merely* because it has been placed in the hands of an attorney. To hold otherwise would mean that a criminal suspect could shield evidence from discovery by the simple expedient of delivery to an attorney, a result we deem patently unreasonable.

■■■ We are mindful of the need to protect the rights of "innocent" parties—the other clients of an attorney whose office is made the subject of a search warrant. Although, as here, a warrant may describe the items to be seized and the location of the office in which they may be found with constitutionally sufficient particularity, such searches remain extremely sensitive, in that the executing officers may unwittingly be exposed to other individuals' confidences and secrets. Nonetheless, we remain unpersuaded that the

acquisition of a search warrant for a non-suspect attorney's office is *per se* unreasonable.

Courts have consistently upheld searches of law offices where the attorney at issue was the target of a criminal investigation. *See, e.g., Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955 (3d Cir.1984); *In re Application of the United States for an Order,* 723 F.2d 1022 (1st Cir.1983); *National City Trading Corp. v. United States,* 635 F.2d 1020 (2d Cir.1980). Moreover, language from the United States Supreme Court suggests that a search of a non-suspect attorney's office may be constitutionally permissible. In *Zurcher v. Stanford Daily, supra,* the Court, per Mr. Justice White, upheld the validity of a search pursuant to a warrant, of the offices of a newspaper. The warrant authorized the seizure of negatives, film, and photographs of an assault by demonstrators on nine police officers several days earlier. The Court initially framed the issue as the construction and application of the Fourth Amendment to the

'third party' search, the recurring situation where state authorities have probable cause to believe that fruits, instrumentalities or other evidence of crime is located on identified property but do not have probable cause to believe that the owner or possessor of the property is himself implicated in the crime that has occurred or is occurring.

436 U.S. at 553, 98 S.Ct. at 1975, 56 L.Ed.2d at 534. As the Court concluded,

the critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific items to be searched for and seized are located on the property to which entry is sought.

*Id.,* 436 U.S. at 556, 98 S.Ct. at 1976–1977, 56 L.Ed.2d at 535.

In *Zurcher,* the *Stanford Daily* contended that additional factors, derived from the First Amendment, justified a

nearly *per se* rule forbidding the use of a search warrant and permitting only the issuance of a subpoena duces tecum, where the third party involved is a newspaper. Here, the newspaper voiced a concern that the press' ability to gather, analyze and disseminate news would be seriously threatened by searches of newspaper offices for evidence of crime. In response, Mr. Justice White observed that the interests of the press were already safeguarded, by the terms of the Fourth Amendment itself.

> [T]he Framers took the enormously important step of subjecting searches to the test of reasonableness and to the general rule requiring search warrants issued by neutral magistrates. They nevertheless did not forbid warrants where the press was involved, did not require special showings that subpoenas would be impracticable, and did not insist that the owner of the place to be searched, if connected with the press, must be shown to be implicated in the offense being investigated. Furthermore, the prior cases do no more than insist that the courts apply the warrant requirements with particular exactitude when First Amendment interests will be endangered by the search ... Properly administered, the preconditions for a warrant—probable cause, specificity with respect to the place to be searched and the things to be seized, and overall reasonableness—should afford sufficient protection against the harms that are assertedly threatened by warrants for searching newspaper offices.

*Id.*, 436 U.S. at 565, 98 S.Ct. at 1981–1982, 56 L.Ed.2d at 541.

██ Both aspects of the *Zurcher* holding provide analogies to the search of a non-suspect attorney's office. Since documents of purely evidentiary value—in this context, those not encompassed within the attorney-client privilege or the work-product doctrine—can be seized, the fact that the attorney himself is not suspected of crime is not dispositive. Rather, it is enough that probable cause exists to believe that the attorney's office houses materials that can be helpful in a criminal investigation, as long as the warrant

is sufficiently specific and the search avoids undue abusiveness. Furthermore, the attorney-client privilege is no more expressly mandated by the United States or Pennsylvania Constitutions than is the press privilege relied upon in *Zurcher*. On the contrary, given the "preferred place" assigned to First Amendment freedoms, *Wm. Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59 (1961), privileges asserted thereunder are accorded greater consideration than those statutorily prescribed. *See Search of the Lawyer's Office—Court Sanctioned Threat to Confidential Communications*, 32 Ala.L.Rev. 92 (Fall 1980). The attorney-client relationship, although entitled to considerable deference, is neither sacrosanct nor inviolate. Thus, in light of *Zurcher*, we conclude that the use of a search warrant in the instant context is not *per se* unreasonable.

### III. THE USE OF A SUBPOENA DUCES TECUM

The trial court concluded, however, that the issuance of a search warrant for an attorney's office was inappropriate, regardless of the degree of care used in its execution. Instead, the trial court referred to "less intrusive" means by which the same information could be acquired, specifically a subpoena duces tecum pursuant to 42 Pa.Cons.Stat. § 5905, or as issued by an investigating grand jury. 42 Pa.Cons.Stat. § 4541 *et seq.* Section 5905, however, is directed to the authority of the *judiciary*, and, in any event, is not applicable to the early stages of an investigation, the time, as Mr. Justice White observed, that search warrants are most often employed. *Zurcher, supra*, 436 U.S. at 561, 98 S.Ct. at 1978, 56 L.Ed.2d at 538. In relevant part, Section 5905 provides,

> Every court of record shall have power in any civil or criminal matter to issue subpoenas to testify, with or without a clause of duces tecum, into any county of this Commonwealth to witnesses to appear before the court
> . . .

42 Pa.Cons.Stat. § 5905. As is evident from the statutory language, the court lacks authority to compel the produc-

tion of documents absent a pending proceeding. "The essence of a subpoena's function is to aid the court in the resolution of litigation, so that if there is no formal proceeding before the court there can be no legitimate reason to issue a subpoena." *Commonwealth v. Polak,* 438 Pa. 67, 69, 263 A.2d 354, 356 (1970). *See also Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 704, 62 L.Ed.2d 668 (1980) (Subpoena concededly unlawful where, at time of issuance, there were no ongoing legal proceedings against appellant.)

Characterizing the impanelment of an investigating grand jury with its subpoena powers as a less intrusive means by which to proceed, the trial judge quashed the search warrant. Similarly, appellee and amici curiae, the Pennsylvania Trial Lawyers' Association and the Allegheny County Bar Association, contend that requiring law enforcement personnel to proceed by subpoena duces tecum when seeking documents in a non-suspect attorney's possession will not unreasonably burden law enforcement efforts. Although the Commonwealth's information-gathering capabilities would thereby be somewhat restricted in the early stages of an investigation, appellee and amici view this measure as essential to preservation of attorney-client confidentiality. While several states have adopted such a proposal,[8] we do not view this as the appropriate rule for Pennsylvania.

Initially, we note that the *Zurcher* Court, faced with the search of a newspaper office, explicitly rejected a claim that such a standard was constitutionally mandated:

The Fourth Amendment has itself struck the balance between privacy and public need, and there is no occasion or justification for a court to revise the Amendment and strike a new balance by denying the search warrant in the circumstances present here and by insisting that the investigation proceed by subpoena duces tecum, whether

8. California and Minnesota have accepted this standard. *See Deukmejian v. Superior Court,* 103 Cal.App.3d 253, 162 Cal.Rptr. 857 (1980) and *O'Connor v. Johnson,* 287 N.W.2d 400 (Minn.1979).

on the theory that the latter is a less intrusive alternative or otherwise.

*Zurcher v. Stanford Daily*, 436 U.S. at 559–560, 98 S.Ct. at 1978, 56 L.Ed.2d at 537–38. States have, of course, the constitutional power to guard individual rights, including the right to be free from unreasonable searches and seizures, more zealously then the federal government does under the United States Constitution. *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). Thus, Pennsylvania courts have often extended more privacy protection under Article I, § 8 than required by the federal constitution. *See, e.g., Commonwealth v. Beauford*, 327 Pa.Super. 253, 475 A.2d 783 (1984) (Neither a pen register nor a dialed number recorder may be installed without a judicial order based on probable cause); *Commonwealth v. DeJohn, supra* (Bank customers have legitimate expectation of privacy in bank records pertaining to their affairs.) Yet our research has discovered no case wherein our Supreme Court or this Court foreclosed the use of a search warrant as a means by which to secure from a third party, "things" in which an individual has a recognized privacy interest. After acknowledging that the subpoena issued were invalid, the Supreme Court stated in *DeJohn, supra,*

A bank could always be compelled to turn over customer's records when served with a valid search warrant or some other type of valid legal process ...

*Id.*, 486 Pa. at 48, 403 A.2d at 1291. *See also Commonwealth v. Duden*, 326 Pa.Super. 73, 473 A.2d 614 (1984); *Commonwealth v. Gannon*, 308 Pa.Super. 330, 454 A.2d 561 (1982). Moreover, in *Commonwealth v. Santner*, 308 Pa.Super. 67, 454 A.2d 24 (1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984), this Court noted the impact of a search of a physician's office upon the privacy interests of patients uninvolved in the criminal scheme under investigation. *Id.*, 308 Pa.Super. at 82, 454 A.2d at 30–31. While *Santner* is distinguishable from the instant

case, in that there the physician himself was the target of the investigation, the privacy interests of the uninvolved "clients" remains the same. Furthermore, although the warrant in *Santner* was insufficiently particular, no suggestion was made that a constitutionally precise warrant would nonetheless fail, and that alternate investigatory methods would be required.

The public has a fundamental interest in implementation of the criminal law. No evidence demonstrating that application of the Fourth Amendment's reasonableness requirement will not adequately safeguard the interests of these other clients has been presented. Thus, we will not reject the search warrant, a heretofore effective and constitutionally acceptable enforcement tool.

## IV. CONCLUSION

The use of a search warrant, then, is not unreasonable in this context. Given the significant interest we perceive in preservation of the confidences of "innocent" fourth parties, however, we conclude that the *execution* of a carefully tailored warrant, supported by probable cause, should be circumscribed with "particular exactitude." This is especially necessary, since vindication of the rights of these individuals cannot be effected by the limited protection provided by the post-seizure remedy of suppression. Therefore, Pennsylvania courts, and in the first instance, the Courts of Common Pleas, should, when the issue is timely presented, establish procedures to assure that these searches are conducted in a manner that minimizes intrusions on the legitimate privacy interests of attorneys and their clients. Guidance here can be found in the well-reasoned analysis of the Court of Appeals for the Third Circuit in *Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955 (3d Cir.1984). *See also* Bloom, *The Law Office Search: An Emerging Problem and Some Suggested Solutions,* 69 Geo.L.J. 1, 54–97 (1980); Cal.Penal Code § 1524; Justice

Department Guidelines promulgated pursuant to the Privacy Protection Act, 42 U.S.C. § 2000aa–11.[9]

Accordingly, the order quashing the search warrant in the instant case is vacated, and the case is remanded to the trial court.

Jurisdiction is relinquished.

9. The fact that the Pennsylvania General Assembly has not followed the lead of the California legislature does not preclude the judiciary in this Commonwealth from establishing procedures to be used in this situation.