**DEPARTMENT OF MILITARY AND VETERAN AFFAIRS, Petitioner,**

v.

**CIVIL SERVICE COMMISSION (KORENYI–BOTH), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided Oct. 30, 1998.

Eclemus Wright, Jr., Annville, for petitioner.

F. Scott Donahue, Philadelphia, for respondent.

Before COLINS, President Judge, LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

The Department of Military and Veterans Affairs (Department) petitions this Court to review an adjudication of the Pennsylvania Civil Service Commission (Commission) dated January 28, 1997. The Commission overruled the removal of Dr. Andras Korenyi–Both as a Management Physician 1 with the Department and reinstated his employment. We affirm.

The Commission made the following findings of fact: Dr. Korenyi–Both was employed as a Management Physician 1 at the Southeastern Pennsylvania Veteran's Center (SEPVC) from 1993 to May 28, 1996, the day of his dismissal. Prior to his dismissal, Dr. Korenyi–Both attempted, on a number of occasions, to address with his immediate supervisor and the Commandant of SEPVC concerns about problems in the quality of care being provided to the patients at SEPVC. Dr. Korenyi–Both's superiors, however, ignored his concerns and warnings. Thereafter, Dr. Korenyi–Both was charged by his immediate supervisor with allegations of poor work performance. A predisciplinary conference (PDC) was held at which Dr. Korenyi–Both was represented by three attorneys. During the PDC, the Chief Counsel for the Department provided Dr. Korenyi–Both with the medical records of seven patients. The allegations against Dr. Korenyi–Both were based upon care provided to these patients. The patients' names and their medical records were discussed at the PDC before Dr. Korenyi–Both's attorneys and others present. At the conclusion of the PDC, two significant things happened: (1) the Chief Counsel gave the medical records to Dr. Korenyi–Both, at the request of the doctor's attorneys, so that he could prepare a rebuttal to the charges, and (2) Dr. Korenyi–Both's attorneys approached the Chief Counsel informing him that Dr. Korenyi–Both had information concerning mismanagement at the facility and negligent care given to patients there. The Chief Counsel stated that he was very anxious to receive such information and that the attorneys should send any information they had to him directly. As a result of the PDC proceedings, however, Dr. Korenyi–Both was suspended for one day for failure to follow established procedures, negligence, and failure to obey superiors. Dr. Korenyi–Both appealed to the Commission. Before the Commission could review the matter, however, the Department withdrew Dr. Korenyi–Both's suspension.

Pursuant to the discussion between the Chief Counsel and Dr. Korenyi–Both's attorneys regarding mismanagement and negligence with patient care, Dr. Korenyi–Both drafted summaries of the medical records of forty-seven patients and forwarded to his attorneys copies of the records with his summaries to, in turn, give to the Chief Counsel. This information was directly mailed to the Chief Counsel. As a result of this information, the Chief Counsel launched an investigation that resulted in, among other things, the removal of Dr. Korenyi–Both's immediate supervisor as an attending physician at SEPVC. In fact, the Department's investigation into the matters Dr. Korenyi–Both raised in the patient summaries was described by the Department as aggressive.

A second consequence came from Dr. Korenyi–Both's efforts, however. By letter dated May 28, 1996, Dr. Korenyi–Both was removed from his position as Management Physician 1, being charged with "poor work performance and violations of state code and statute concerning confidentiality of medical information." The latter charge stemmed from Dr. Korenyi–Both's release to his attorneys of the patient information to send to the Department for its investigation. Dr. Korenyi–Both appealed to the Commission. At a hearing before the Commission, the Depart-

ment, through its Chief Counsel, dropped all allegations of poor work performance, stipulating that Dr. Korenyi–Both is a "very fine physician." Commission's Adjudication, p. 9.

The Department, however, continued to argue that Dr. Korenyi–Both had violated the confidentiality of patients' medical records by handing over to his attorneys the records of the forty-seven patients for delivery to the Chief Counsel. The Department cited violations of 49 Pa.Code § 16.61(a)(1) (defining unprofessional conduct for a physician as "[r]evealing personally identifiable facts, obtained as the result of a physician-patient relationship, without the prior consent of the patient, except as authorized or required by statute") and Section 5929 of the Judicial Code, 42 Pa.C.S. § 5929 (prohibiting a physician from disclosing in a civil proceeding, except under certain circumstances, any information, acquired while attending a patient in a professional capacity, that shall tend to blacken the character of the patient). The Department also argued that Dr. Korenyi–Both violated SEPVC's policy and the Department's Standards of Conduct and Work Rules prohibiting the disclosure of medical records or other confidential information.

After reviewing the evidence, the Commission determined that the Department failed to demonstrate just cause for removal under the circumstances.[1] The Commission noted that Dr. Korenyi–Both had done nothing more than what the Department had done at the PDC, where patient information was freely discussed without the prior consent of the patients and where medical records were delivered to Dr. Korenyi–Both for the purpose of his attorneys preparing a legal defense. The Commission further noted that Dr. Korenyi–Both provided the information with the understanding that it was requested by the Chief Counsel to further the best interests of the Department. The Commission stated:

> We find this case particularly disturbing because we are convinced that [Dr. Korenyi–Both's] actions were not only instigated by the [Department's] representatives, but also provided the [Department] with important information about ongoing problems in the quality of care provided patients under the management of [the dismissed supervisor]. [Dr. Korenyi–Both] acted in the sincere belief that the [Department] was committed to gathering information that would enable it to correct these problems: indeed the [Department] acted promptly on the information [Dr. Korenyi–Both] provided but, astonishingly, moved against [Dr. Korenyi–Both] for providing it!

Commission's Adjudication, p. 19.

 This petition for review followed. Our scope of review is limited to a determination of whether constitutional rights have been violated, errors of law were committed, or findings of fact were not supported by substantial evidence. *Bowman v. Department of Environmental Resources*, 549 Pa. 65, 700 A.2d 427 (1997). Moreover, we will not review the discretionary decisions of administrative tribunals in the absence of bad faith, fraud, capricious action, or abuse of power. *Id.*

The [a]ppointing [a]uthority [in this case, the Department] has the burden of proving that it had just cause to remove a regular civil service employee from his or her position. The factors supporting a removal must be related to the employee's job performance and touch in some logical manner upon the employee's competency and ability to perform the job. Whether the employee's actions gave the appointing authority just cause for dismissal is a question of law that this Court may review.

*Bazargani v. State Civil Service Commission (Haverford State Hospital)*, 711 A.2d 529, 532 (Pa.Cmwlth.1998).

 The Department argues that Dr. Korenyi–Both violated federal and state law, as well as employer policy and the medical code of ethics, concerning unauthorized dissemination of confidential medical records, and for these reasons the Department had just cause to terminate Dr. Korenyi–Both.

---

1. The Commission also noted that the Department failed to establish the relevance of 42 Pa. C.S. § 5929 to the charges made against Dr. Korenyi–Both.

In making this argument, the Department raises an array of statutory and regulatory grounds in support of its position. The Department cites: 42 U.S.C. § 290–dd–3 [2]; 71 P.S. § 1690.108 [3]; 50 P.S. § 7111 [4]; 28 Pa. Code § 211.5(c) [5]; 43 Pa.Code § 1.2(a) and (b) [6]. These statutes and regulations, according to the Department, generally provide that absent an emergency or a court order, medical records cannot be disclosed without the consent of the patient. In this case, no patient authorization or court order was obtained with respect to the medical records of the forty-seven patients. The Department thus argues that the unauthorized disclosure of patient records to Dr. Korenyi–Both's attorneys touches upon Dr. Korenyi–Both's competency and ability to perform his job, constituting just cause for his dismissal. The Department further argues that the trust that the patients had placed in their physicians has been destroyed and that the SEPVC "will now have to re-establish the trust of its patients." Department's Brief, p. ix. Also the Department argues that Dr. Korenyi–Both's actions "jeopardized the licenses of the five state-operated nursing homes established to assist veterans." *Id.* The Department then attacks the motives of Dr. Korenyi–Both in providing the information on the forty-seven patients, alleging that it was done selfishly to divert attention away from the charges levied against him. The Department also attempts to distinguish its handling of medical records at the PDC by stating that the seven medical records at issue there were handed directly to Dr. Korenyi–Both and not to a "third" party, namely Dr. Korenyi–Both's attorneys. The Department also argues that its request for information from these attorneys regarding negligent care and mismanagement at

SEPVC could not be construed as a request to break the law. The Department cites two cases in support of its position that just cause supports the Department's termination of Dr. Korenyi–Both: *Turzai v. Pennsylvania Liquor Control Board,* 90 Pa.Cmwlth. 374, 495 A.2d 639 (Pa.Cmwlth.1985), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986) (affirming the Commission's adjudication that sustained the removal of an enforcement officer of the Liquor Control Board who disclosed to a bar owner and bar tender that their bar was under investigation by his employer), and *Arbster v. Unemployment Compensation Board of Review,* 690 A.2d 805 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 549 Pa. 718, 701 A.2d 579 (1997) (affirming the denial of unemployment compensation benefits for a hospital worker discharged for willful misconduct because she accessed confidential hospital records in violation of hospital policy that pertained to her mother's treatment).

■ We find the Department's arguments to be completely without merit. We must first note that several of the Department's arguments are made without any support from evidence of record and are in contravention to the findings of the Commission. There is nothing in the record that asserts that, because of Dr. Korenyi–Both's actions, the trust of patients at the Department's facilities has been broken or that the licenses of the Department's nursing homes are in jeopardy. Indeed, the evidence demonstrates that the medical records of the forty-seven patients were disclosed to no party by Dr. Korenyi–Both except to his attorneys for delivery to the Department's Chief Counsel. The Department has presented no evidence that the disputed information went beyond

---

2. Relating to the confidentiality requirements of records of drug and alcohol patients.

3. Section 8 of the Pennsylvania Drug and Alcohol Abuse Control Act, Act of April 14, 1972, P.L. 221, *as amended,* 71 P.S. § 1690.108, relating to the confidentiality of patient records concerning drug or alcohol abuse or dependence.

4. Section 111 of the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, 50 P.S. § 7111, relating to the confidentiality of documents concerning persons in mental health treatment.

5. Chapter 211 of 28 Pa.Code concerns standards at long-term nursing facilities. Section 211.5(c) relates to the confidentiality of medical records at such facilities.

6. Chapter 1 of 43 Pa.Code concerns general provisions relating to Departmental records. Section 1.2 relates to the confidentiality and release of military personnel and medical records maintained by the Department.

the chain from Dr. Korenyi–Both to his attorneys to the Chief Counsel. Further, the Commission determined that this disclosure was made because Dr. Korenyi–Both understood that the Chief Counsel was interested in receiving them. Commission's Adjudication, p. 14. No evidence was presented concerning any other motivation. It is clearly inappropriate for the Department to request this Court to find or consider facts contrary to or different from those found by the Commission. The Commission is the sole judge of credibility in civil service adjudications. *Metrick v. Civil Service Commission (Butler County, Department of Public Welfare)*, 687 A.2d 26 (Pa.Cmwlth.1996).

We also note that the Department's citations to case law and statutory and regulatory law fail to build a persuasive argument. The Department's citation to *Arbster* is completely inapposite. *Arbster* involves the issue of whether or not a non-civil service employee committed willful misconduct by accessing hospital records in violation of her employer's policy, thus rendering her ineligible for unemployment compensation benefits.[7] That issue has nothing to do with whether or not the Commission correctly determined that the Department failed to establish just cause for Dr. Korenyi–Both's dismissal under the particular facts of this case. Likewise, the Department's citation to *Turzai* is also to no avail. Not only are the factual scenarios between that case and the one before us vastly different, but the issues raised by the petitioner in *Turzai* were largely procedural and thus different from the salient issue here: whether just cause existed under the circumstances to justify dismissal.

██ The Department's arguments concerning Dr. Korenyi–Both's alleged violations of law and the Department's policies are also defective. They fail to take into account the protections inherent in an attorney-client relationship and a full view of the Department's regulations concerning the release of medical records in its charge. The Department states throughout its brief that Dr. Korenyi–Both "disseminated" medical information;

yet the facts, found by the Commission, are that Dr. Korenyi–Both merely used his attorneys as a conduit to deliver information to the Department's Chief Counsel so that an investigation into mismanagement and negligent patient care could be undertaken. The Department fails to observe the fundamental precept that an attorney-client privilege prohibits disclosure of confidential communications made by a client to his or her attorney. This fundamental concept is recognized in Pennsylvania by the common law, statute, and the professional rules of conduct for lawyers. *See In re Gartley*, 341 Pa.Super. 350, 491 A.2d 851 (Pa.Super.1985), *aff'd, In re Search Warrant B–21778*, 513 Pa. 429, 521 A.2d 422 (1987). As our Superior Court observed in *Gartley*, the confidentiality enjoyed by a client for disclosures to his or her attorney extends also when the attorney acts as an intermediary. Again, the Department does not allege that law or policy was violated by disclosure of medical records to the Department's Chief Counsel, but only by Dr. Korenyi–Both's use of his attorneys to direct the information to the Chief Counsel. In view of the confidential relationship Dr. Korenyi–Both enjoyed with his attorneys and the nature of the disclosure of the medical information as found by the Commission, we cannot discern a difference between delivering the information directly to the Chief Counsel or using attorneys under hire to convey this information. As the Commission determined, this situation is no different from that which occurred at the PDC where confidential patient information was discussed before Dr. Korenyi–Both's attorneys and where the Department handed over medical records to the doctor so that he could, by and through his attorneys, prepare a rebuttal defense. In both instances, attorneys were used in the facilitation of important administrative functions of the Department, functions designed to protect patients in the Department's care.

The Department has promulgated regulations directly concerning the disclosure, access, and release of records within its posses-

---

7. The Department's argument that this Court upheld the *termination* of the employee in *Arbster* is completely incorrect.

sion. Subchapter A of Chapter 1 of the Department's regulations sets forth "the standards for public release of ... records" maintained by the Department. 43 P.S. § 1.1. The "public" release or disclosure of military personnel or medical records maintained by the Department is prohibited except under one of seven listed exceptions. 43 Pa.Code § 1.2(a). Section 1.2(b)(4) provides that such records may be released "[f]or any routine uses and other official purposes to carry out the mission and perform the functions of the Department...." 43 Pa.Code § 1.2(b)(4). Written permission from the Department is not required before records may be publicly released under any of the seven exceptions listed under Section 1.2(b). 43 Pa.Code § 1.5.

At the hearing before the Commission, the Department acknowledged that an investigation into mismanagement and negligent care of its patients pertains to the mission and functions of the Department. Notes of Testimony, p. 236. Therefore, the Department's argument that Dr. Korenyi–Both violated Department policy and state regulations is contrary to such stated policy and regulations. Moreover, it is arguable that there has not been a "public" release of documents in this matter at all. The medical records were not "disseminated" or made public, but were merely presented to attorneys working under a confidential relationship with their client for conveyance to a Department official in furtherance of that official's duties following a direct request for information.[8]

The ultimate issue before us is whether the Department had just cause to dismiss Dr. Korenyi–Both. The Commission found that Dr. Korenyi–Both copied and gave medical records to his attorneys to forward to the Department's Chief Counsel to uncover mismanagement and negligent care that was threatening patients receiving treatment at SEPVC. Dr. Korenyi–Both did not disclose this information to any other persons. The disclosure was thus not public. Even if it

was, it falls under the exception to the prohibition of public disclosure of records set forth at 43 Pa.Code § 1.2(b)(4). Dr. Korenyi–Both's pattern of disclosure was no different than that practiced at the PDC by the Department, and was for similarly important administrative functions. Thus, it is clear that the Commission did not err by determining that the Department did not establish just cause for Dr. Korenyi–Both's dismissal. Dr. Korenyi–Both's actions did not negatively touch upon his competency and ability to perform his job. Indeed, under the facts found by the Commission, his disclosure to the Chief Counsel of the information at issue was beneficial to the Department and the patients under its charge.

For the above reasons, the order of the Commission is affirmed.

### ORDER

AND NOW, this 30th day of October, 1998, the order of the Pennsylvania Civil Service Commission in the above-captioned matter is hereby affirmed.

---

8. Regulations concerning long-term health care facilities, that the Department also argues were violated, also provide for disclosure of medical records to authorized government representatives in the course of their duties. 28 Pa.Code § 211.5(c). The Department appears to acknowledge that both Dr. Korenyi–Both and the Chief Counsel are authorized to review medical records. Assuming *arguendo* that this is true, the use of attorneys hired by one authorized party to convey records to another authorized party does not violate this regulation.