J-S12010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DONALD CHARLES BURRELL | |
| Appellant | No. 660 MDA 2016 |

Appeal from the Judgment of Sentence November 9, 2015
In the Court of Common Pleas of Bradford County
Criminal Division at No(s): CP-08-CR-0000178-2014

BEFORE: PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 28, 2017**

Appellant, Donald Burrell, appeals from the judgment of sentence entered after a jury convicted him of over 200 crimes arising from the sexual abuse of his daughter. Burrell asserts that the trial court committed the following errors: (1) determining that he was competent to stand trial; (2) denying his motion to suppress evidence seized from his computer; (3) allowing evidence of all charged crimes to be presented at trial; (4) determining that the evidence at trial was sufficient to support his convictions; and (5) imposing an excessive sentence. After careful review, we conclude that the trial court did not err or abuse its discretion on any of these issues, and therefore affirm.

In 2013, Burrell was charged with sexually assaulting his daughter consistently over a 20 year period. He had previously been charged with

many of the same crimes in 2002, but after his daughter had recanted, the Commonwealth *nolle prossed* the charges. The charges were filed again in 2013, alongside charges arising from conduct occurring between 2002 and 2013.

In pre-trial motions, Burrell raised the issue of his competency to stand trial, whether double jeopardy barred the prosecution of the crimes he had been charged with in 2002, and whether the search warrant for his computer was overbroad. After the trial court denied all three motions, the case proceeded to a jury trial.

At trial, the victim testified that Burrell kept a calendar that memorialized the abuse, as well as assorted other evidence. The calendar recorded over 200 incidents of sexual intercourse between Burrell and his daughter. The jury found him guilty on all charges.

The trial court subsequently sentenced Burrell to an aggregate sentence of 1,031 to 2,546 years of imprisonment. It accomplished this sentence by running the sentences for all non-merged convictions consecutively. Burrell filed post-sentence motions, which the trial court denied. This timely appeal followed.

In his first issue, Burrell argues that the trial court erred in concluding that he was competent to stand trial. "A defendant is presumed to be competent to stand trial, and the burden is on the defendant to prove by a preponderance of the evidence that he is incompetent to do so."

***Commonwealth v. Blakeney***, 108 A.3d 739, 752 (Pa. 2014) (citation omitted), ***cert. denied***, 135 S.Ct. 2817 (2015).

> Competency to stand trial is measured by the relationship between counsel and client: To be deemed competent, the defendant needs to have the ability to consult with counsel with a reasonable degree of understanding, in order to participate in his defense, and he must be able to understand the nature or object of the proceedings against him. The focus is properly on the defendant's mental capacity, *i.e.,* whether he has the ability to understand the proceedings.

***Id***. (internal citations omitted).

After reviewing the briefs of the parties and the certified record, we conclude that the well-written opinion of the Honorable Maureen T. Beirne denying Burrell's post-sentence motions thoroughly and adequately addresses this issue. ***See*** Trial Court Opinion, 3/30/16, at 2-6 (crediting the testimony of the Commonwealth's experts in psychology and psychiatry that Burrell was malingering).

Next, Burrell asserts that the trial court erred in concluding that the search warrant for files on his computer was overly broad and therefore infringed on Constitutionally protected rights.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the

[suppression] court's legal conclusions are erroneous. Where … the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on [the] appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [suppression court are] subject to … plenary review.

***Commonwealth v. Hoppert***, 39 A.3d 358, 361-362 (Pa. Super. 2012)

(citations omitted). Furthermore,

[a] search warrant cannot be used as a general investigatory tool to uncover evidence of a crime. Nor may a warrant be so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize, which would result in the general "rummaging" banned by the Fourth Amendment. Thus, Pa.R.Crim.P. 205 specifies the necessary components of a valid search warrant. The comment to Rule 205 provides, however, that even though general or exploratory searches are not permitted, search warrants should "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." Pa.R.Crim.P. 205 (cmt.). Embracing this approach, we have held that "where the items to be seized are as precisely identified as the nature of the activity permits ... the searching officer is only required to describe the general class of the item he is seeking."

A warrant is defective when its explanatory narrative does not describe as clearly as possible those items for which there is probable cause to search. In assessing the validity of a description contained in a warrant, a court must initially determine for what items there was probable cause to search. "The sufficiency of the description [in the warrant] must then be measured against those items for which there was probable cause. Any unreasonable discrepancy between the items for which there was probable cause [to search] and the description in the warrant requires suppression."

***Commonwealth v. Rega***, 933 A.2d 997, 1011-1012 (Pa. 2007) (citations

omitted)

- 4 -

After reviewing the briefs of the parties and the certified record, we conclude that the opinion of the Honorable Maureen T. Beirne denying Burrell's post-sentence motions thoroughly and adequately addresses this issue. *See* Trial Court Opinion, 3/30/16, at 6-9 (concluding that the search was sufficiently particularized given the scope of the charges involved).[1]

In his third issue, Burrell contends that the trial court erred in permitting the Commonwealth to try him on the charges that had been *nolle prossed* in 2003. He asserts that by doing so, the trial court violated the doctrine of collateral estoppel and thus, his right against double jeopardy.

> The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined to by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.
>
> Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are

_____

[1] The trial court states in its opinion that "the appellate courts of Pennsylvania have not specifically ruled on the issue of search warrants for computer files and the restrictions to be enforced to prevent overbroad searches." Trial Court Opinion at 8. It bears mention that this Court, in **Commonwealth v. Orie**, 88 A.3d 983 (Pa. Super. 2014), addressed a claim of overbroad search warrants for digital evidence, and noted that the law concerning search and seizure of digital information remains under development in Pennsylvania. **See id**., at 1009 n.43.

- 5 -

met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; 3) a final judgment on the specific issue in question was issued in the first action. An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.

*Commonwealth v. Holder*, 805 A.2d 499, 502-503 (Pa. 2002) (citations and footnote omitted).

Burrell argues that the Commonwealth's decision to *nolle prosse* the charges filed in 2002, combined with the length of time between the *nolle prosse* and the current charges, acted as a final adjudication on the merits of those charges. However, as the trial court aptly notes, this argument is wrong as a matter of logic and of law. The Commonwealth's decision to *nolle prosse* charges does not implicate double jeopardy concerns, as the decision to voluntarily end a prosecution is not the equivalent of a conviction or an acquittal. *See Commonwealth v. Ahern*, 670 A.2d 133, 135 (Pa. 1996). Furthermore, the Commonwealth's decision to withdraw the charges *prior* to trial in 2003, as a matter of logic, means that the issue was never submitted for determination, let alone decided. Therefore, Burrell cannot establish prongs 2 and 3 of the test for collateral estoppel, and the trial court correctly rejected this argument.

Next, Burrell contends that the evidence at trial was insufficient to support his convictions. Our standard of review for a challenge to the

sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id*. (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See id*. "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Bruce*, 916 A.2d at 661 (citation omitted).

After reviewing the briefs of the parties and the certified record, we conclude that the opinion of the Honorable Maureen T. Beirne denying Burrell's post-sentence motions thoroughly and adequately addresses this issue. *See* Trial Court Opinion, 3/30/16, at 11-13 (concluding that the

evidence supporting other sex crime charges was sufficient to establish the charges of incest; that, among other evidence, the victim's calendar was sufficient to establish the number of incidents; and that Burrell's argument that there was no evidence corroborating the victim's testimony was an argument about weight, not sufficiency).

In his final argument, Burrell contends that the trial court abused its discretion in imposing sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." **Commonwealth v. McAfee**, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted). "Two requirements must be met before we will review this challenge on its merits." **Id**. (citation omitted).

"First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." **Id**. (citation omitted). "Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **Id**. (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." **Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005) (citation omitted).

We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists. **See id**. "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id**. (citation omitted); **see also** Pa.R.A.P. 2119(f).

In the present case, Burrell's appellate brief contains the requisite Rule 2119(f) concise statement. In his statement, Burrell does not identify any substantive argument against the sentence imposed. After setting forth the standard by which we review such statements, Burrell provides the following reasoning:

> The Appellate Court should vacate the sentence and remand the matter wherein further evaluations should be conducted for the purpose of determining Donald C. Burrell's competency to stand criminal trial, or the Appellate Court should vacate the sentence and retrial be directed wherein the evidence that was the subject of the motion to suppress is precluded and the evidence of all sexual related crimes from 1991 to 2003 are precluded, or the Appellate Court should vacate the sentence due to a lack of legal sufficiency of evidence, or the sentence should be modified.

Appellant's Brief, at 7. Put simply, Burrell does not even attempt to raise a substantial question regarding the discretionary aspects of his sentence.

Even if we were to review Burrell's sentence pursuant to the issues he raised in his post-sentence motions, we would afford no relief. After reviewing the briefs of the parties and the certified record, we conclude that the opinion of the Honorable Maureen T. Beirne denying Burrell's post-sentence motions comprehensively addresses this issue. **See** Trial Court

Opinion, 3/30/16, at 13-14 (concluding that Burrell's repeated, long-term sexual abuse of his daughter constituted a "lifetime of torture," and therefore justified a life sentence).

As none of Burrell's arguments on appeal merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2017

IN THE COURT OF COMMON PLEAS
BRADFORD COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :

VS : NO. CP-08-CR-0000178-2014

DONALD C. BURRELL :

: : : : : : : : : : : : : :

MEMORANDUM OPINION AND ORDER OF COURT

BEFORE: BEIRNE, M.T., P.J.

## I.    Procedural Background.

On June 25, 2015, Donald C. Burrell (hereinafter referred to as "the Defendant") was found guilty by a jury of the following:

(1)    Twenty (20) counts of Rape, 18 Pa.C.S.A. §3121(a)(6),

(2)    Ten (10) counts of Rape, 18 Pa.C.S.A. §3121(a)(2),

(3)    Twenty (20) counts of Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. §3123(a)(5),

(4)    Twenty (20) counts of Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. §3123(a)(7),

(5)    Eight (8) counts of Sexual Abuse of Children, 18 Pa.C.S.A. §6312(b),

(6)    Eight (8) counts of Sexual Abuse of Children, 18 Pa.C.S.A. §6312(d),

(7)    Two hundred (200) counts of Incest, 18 Pa.C.S.A. §4302, and

(8)    Multiple counts of the following: Statutory Rape, 18 Pa.C.S.A. §3122; Involuntary Deviate Sexual Intercourse, 18 Pa.C.S.A. §3123(a)(6); and Statutory Sexual Assault, 18 Pa.C.S.A. §3122.1.

1

R2

On November 9, 2015, the trial court sentenced the defendant on the above convictions to be served consecutively. In its sentencing order, the court noted that the counts of statutory rape, involuntary deviate sexual intercourse under 18 Pa.C.S.A. §3123(a)(6), and statutory sexual assault, all merge with other offenses, and therefore, no sentence would be imposed. As a result, the defendant was sentenced to an aggregate minimum sentence of 12,372 months and an aggregate maximum sentence of 30,552 months. Further, the defendant is not eligible for Recidivism Risk Reduction Incentive (RRRI). Finally, the defendant was identified by the trial court as a sexually violent predator under 42 Pa.C.S.A. §9799.24.

The defendant has filed multiple post-sentence motions with the trial court.

## II. Issue(s) Presented.

A. Whether the trial court erred in not granting further evaluations to determine Defendant's competency to stand criminal trial.

B. Whether the trial court erred in denying the motion for suppression of evidence regarding the files from the computer of Defendant.

C. Whether the trial court erred in allowing all sexual related crimes from 1991 to 2003 to come in at trial, allegedly against the doctrine of collateral estoppel.

D. Whether the trial court should vacate the sentence due to an alleged lack of legal sufficiency of evidence.

E. Whether the trial court should modify the sentence.

## III. Analysis.

**A. Whether the trial court erred in not granting further evaluations to determine Defendant's competency to stand criminal trial.**

At the competency hearing, letters written by Defendant to the victim after he

2

R3

was initially arrested and while incarcerated were submitted into evidence. The letters illustrated Defendant's writing ability and comprehension of the instant matter, which are indicators of his intellectual and cognitive ability, and ultimately, competence to stand criminal trial. After considering these letters and the expert testimony presented by both sides, by Order of April 13, 2014, the Court found that the defendant did not meet its burden of proof and the motion to find incompetent was denied and dismissed. A Memorandum Opinion accompanied the Order setting forth the reasons for the conclusion.

In order to meet the burden of proof, Defendant's evaluating psychologist, Dr. Michael H. Palmer, was called to testify. He opined that Defendant suffered from severe dementia, a condition that is not likely to improve, and he is, therefore, incompetent to stand criminal trial. In reaching his diagnosis of severe dementia, Dr. Palmer relied upon psychological tests, including but not limited to, an IQ test, a neuro-cognitive test, and a personality test, as well as personal interview with Defendant and information about the defendant received from the psychologist at the Bradford County, Pennsylvania, Correctional Facility (BCCF).

Several issues came to light during Dr. Palmer's testimony that affected its weight. First, Dr. Palmer testified that he had not included a test *specifically* designed to detect malingering on the part of the test-taker, and on rebuttal, agreed that the Commonwealth's tests showed borderline malingering. In defense of his evaluation, Dr. Palmer stated that one of his tests *might* suggest malingering depending upon a test-taker's score and that the Defendant's test scores did not seem to him to be indicative of deception by the Defendant. Second, Dr. Palmer testified that he had never seen the letters submitted into evidence, and that the writing ability and comprehension evidenced by the letters was far better than what he had noted during his

3

R 4

evaluation of Defendant. In order to explain this discrepancy, he stated that it is not uncommon for persons with dementia to experience intervals of lucidity. Third, Dr. Palmer admitted that his evaluation of the defendant did not include a review of the defendant's medical records or any law enforcement records relating to the instant case.

The Commonwealth witness, Dr. Michael A. Church, opined that Dr. Palmer's conclusion of incompetency was incorrect for the following reasons: (1) Dr. Palmer did not make any significant attempt to determine whether Defendant was malingering; (2) Dr. Palmer did not administer any test specifically designed to detect malingering; (3) Dr. Palmer neither considered the available police records in evaluating the defendant nor sought to interview the lead police investigator in the case; (4) Dr. Palmer failed to examine the defendant's medical records in making his evaluation; and (5) Dr. Palmer failed to evaluate the content of the letters sent by the defendant to the victim when reaching his diagnosis. Dr. Church then testified that he conducted a more thorough evaluation which included a test to detect malingering and consideration of the police records, medical records, and letters, as well as the CD of the victim's forensic interview, reports and statements made by the lead police investigator, and the report prepared by Dr. Fischbein following his evaluation of the victim. Based on his evaluation, Dr. Church testified that there were indications of malingering and that the defendant was competent to stand criminal trial.

The Commonwealth also called Dr. Fischbein, a medical doctor specializing in psychiatry, to testify. Dr. Fischbein expressed to the trial court his belief that Dr. Palmer's evaluation of the defendant was defective for (1) his not having tested the defendant for malingering and (2) not exploring the collateral sources of information, i.e. failing to consider the letters, medical reports, police reports, et cetera. Further, Dr. Fischbein testified that the

4

R 5

indicia of mental dysfunction noted by Dr. Palmer during his evaluation of the defendant was contrived by the defendant, and that the defendant is competent to stand criminal trial.

In Pennsylvania, "[a] defendant is presumed to be competent to stand trial." Commonwealth v. Flor, 998 A.2d 606, 617 (Pa. 2010), citing Commonwealth v. Pruitt, 951 A.2d 307, 316 (Pa. 2008). At a competency hearing, the defendant has the burden of proving that he is incompetent to undergo criminal trial by a preponderance of the evidence. *Id.* In order to prevail at such a competency hearing, it must be shown by the defendant that he is unable to understand the nature of the proceedings against him or that he is not able to participate in his own defense. *Id.* In other words, "[t]he relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings." *Id.*

Great deference is given to the trial judge's determination as to competency because he or she had the opportunity to observe directly a defendant's behavior. *Id.* Therefore, when the opinions of expert witnesses during a competency hearing conflict, it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of the conflicting opinion where the record adequately supports such a resolution. *Id.*

In this case, the trial court determined that the defendant failed to meet its burden of showing that it is more likely than not that he was incompetent to stand criminal trial. In making its determination, the testimony of Dr. Church and Dr. Fischbein was accepted over that of Dr. Palmer, as is permitted under Commonwealth v. Flor, because of the noted deficiencies in Dr. Palmer's evaluation – the failure to specifically test for malingering and the failure to consider collateral sources of information for the purposes of the evaluation.

5

R6

The defendant argues that the trial court was obligated to order a long-term evaluation in order to determine competency based on the recommendation of Dr. Palmer at the competency hearing. In making this argument, the Defendant holds forth Cooper v. Oklahoma, 517 U.S. 348 (1996), as obligating the trial court to leave "no stone unturned" especially because of the complexity and volume of this case. However, such language cannot be found in Cooper, which merely discusses how a presumption of competency is constitutional but the burden of proof on a defendant requiring *clear and convincing* evidence of incompetence is not.

For the foregoing reasons, the trial court did not err in determining the defendant was competent to stand criminal trial.

B.    **Whether the trial court erred in denying the motion for suppression of evidence regarding the files from the computer of Defendant.**

During the investigation of the defendant, his Dell laptop computer was searched pursuant to a search warrant. The search warrant identified the items to be searched for and seized as follows:

> Instant [m]essages relating to the sexual abuse of Christina M. BURRELL, and the illegal distribution of narcotics, video files, still image files, documents and any other file relating to the sexual abuse of Christina M. BURRELL. Video files, still image files and any other file depicting [c]hild [p]ornography, any document or file relating to the ordering (possibly online orders), delivery, financial accounting, financial disbursement of funds relating to the trafficking of narcotics, predominately bath salts.[1]

*Application for Search Warrant and Authorization*, Warrant Control Number MD-197-2013, issued August 7, 2013.

The forensic computer expert searched the computer and exported the files he thought were being requested by the Chief Investigator. While the computer expert testified that

---

[1] The language in the search warrant pertaining to drugs was present because the Defendant was being investigated under separate charges related to drug trafficking. A separate trial has been set by the time of this writing.

6



he had to look at files which were not relevant to the case, there is no indication that files not covered by the search warrant were actually exported.

The Defendant, in an omnibus pretrial motion, moved to suppress the evidence seized from the computer arguing that the search warrant was defective for lacking specificity. Subsequently, the trial court denied this motion in June of 2015. It appears no written Order was issued and may have been an oral order.

The Defendant argues that the search warrant was so broad that it allowed the Commonwealth to search private files that had nothing to do with the pending charges.

The Pennsylvania Constitution, Article I, Section 8, provides that all persons shall be secure from unreasonable searches and seizures and that no warrant to search any place or person shall be issued without probable cause. Moreover, it is a fundamental requirement that a warrant shall only be issued upon probable cause. Commonwealth v. Edmunds, 586 A.2d 887, 899 (Pa. 1991). Search warrants must specifically describe the property or things to be seized, and cannot be used as a general investigatory tool. Commonwealth v. Bagley, 596 A.2d 811, 814 (Pa. Super. 1991). The Pennsylvania Supreme Court has concluded Article 1, Section 8 of the Pennsylvania Constitution affords greater protection than the Fourth Amendment, including a more demanding particularity requirement; the description must be as particular as reasonably possible. Commonwealth v. Grossman, 521 Pa. 290, 555 A.2d 896, 899 (Pa. 1989). The place to be searched must be described in a way "precise enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity." In re Search Warrant B-21778, 341 Pa. Super. 350, 491 A.2d 851, 856 (Pa.Super. 1985), aff'd, 513 Pa. 429, 521 A.2d 422 (Pa. 1987).

7

R8

Courts have held that, while items to be seized shall be set forth as precisely as possible, an exact description may be impossible. Commonwealth v. Barba, 314 Pa. Super. 210, 460 A.2d 1103 (Pa.Super. 1983). Therefore, a generic description may suffice. Id. The warrant in the within case stated the items sought.

Although the appellate courts of Pennsylvania have not specifically ruled on the issue of search warrants for computer files and the restrictions to be enforced to prevent overbroad searches, the Third Circuit in United States v. Stabile, 633 F.3d 219 (3d Cir. 2011) appears to agree with the Tenth Circuit in United States v. Burgess, 576 F.3d 1078 (10th Cir. 2009). In Burgess, the warrant authorized a search for "computer records" and "items of personal property which would tend to show conspiracy to sell drugs, including pay-owe sheets, address books, rolodexes, pagers, firearms and monies." The court, in discussing the scope of the search authorized by the warrant, stated the following:

> [I]t is folly for a search warrant to attempt to structure the mechanics of the search and a warrant imposing such limits would unduly restrict legitimate search objectives. One would not ordinarily expect a warrant to search filing cabinets for evidence of drug activity to prospectively restrict the search to "file cabinets in the basement" or to file folders labeled "Meth Lab" or "Customers." And there is no reason to so limit computer searches. But that is not to say methodology is irrelevant.
>
> A warrant may permit only the search of particularly described places and only particularly described things may be seized. As the description of such places and things becomes more general, the method by which the search is executed become more important -- the search method must be tailored to meet allowed ends. And those limits must be functional. For instance, unless specifically authorized by the warrant there would be little reason for officers searching for evidence of drug trafficking to look at tax returns (beyond verifying the folder labeled "2002 Tax Return" actually contains tax returns and not drug files or trophy pictures).
>
> Respect for legitimate rights to privacy in papers and effects requires an officer executing a search warrant to first look in the most obvious places and as it becomes necessary to progressively move from the obvious to the obscure. That is the purpose of a search protocol which structures the

8

R 9

search by requiring an analysis of the file structure, next looking for suspicious file folders, then looking for files and types of files most likely to contain the objects of the search by doing keyword searches. But in the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files. It is particularly true with image files.

Burgess, 576 F.3d at 1094 After a discussion on the search methodologies used to conduct the search, the court in Burgess ruled that no violation of the Fourth Amendment of the United States Constitution took place.

In this case, the affidavit of probable cause gives the foundation for the search to be conducted, and has not been called into question by the defendant. Moreover, the search warrant itself was particularized as much as possible to only search for computer files pertaining to the sexual abuse of Christina Burrell, child pornography, and drug trafficking. Further, there is no evidence that any other type of information was actually exported from the defendant's computer. As noted in Burgess, it would be folly to try to structure the mechanics of a search in a search warrant. Rather, such an analysis should be done by analyzing the methodology actually performed by the investigator performing the search -- something which was not done in this case.

In conclusion, because the search warrant was supported by probable cause, listed the information on the computer to be seized with particularity, and the absence of any evidence implicating any impropriety in methodology or seizure of evidence not particularized in the search warrant, the trial court did not err in denying the defendant's motion to suppress the computer evidence.

C.    Whether the trial court erred in allowing all sexual related crimes from 1991 to 2003 to come in at trial, allegedly against the doctrine of collateral estoppel.

9

RIO

In Commonwealth v. Holder, 805 A.2d 499 (Pa. 2002), the Supreme Court of Pennsylvania summed up the doctrine of collateral estoppel as it applies in Pennsylvania as follows:

> The doctrine of collateral estoppel is a part of the Fifth Amendment's guarantee against double jeopardy, which was made applicable to the states through the Fourteenth Amendment. The phrase "collateral estoppel," also known as "issue preclusion," simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit. Collateral estoppel does not automatically bar a subsequent prosecution, but rather, it bars redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding that has become a final judgment.
>
> Traditionally, Pennsylvania courts have applied the collateral estoppel doctrine only if the following threshold requirements are met: 1) the issues in the two actions are sufficiently similar and sufficiently material to justify invoking the doctrine; 2) the issue was actually litigated in the first action; and 3) a final judgment on the specific issue in question was issued in the first action. An issue is actually litigated when it is properly raised, submitted for determination, and then actually determined. For collateral estoppel purposes, a final judgment includes any prior adjudication of an issue in another action that is sufficiently firm to be accorded conclusive effect.

Commonwealth v. Holder, 805 A.2d 499, 502-503 (Pa. 2002) (citations omitted).

The Defendant argues for applying the doctrine of collateral estoppel because the crimes of the defendant from 1991 to 2003 were initially prosecuted, but then withdrawn pursuant to a *nolle prosequi*, because of the then recantation of the victim. Under Defendant's theory, the filing and granting of the *nolle prosequi* coupled with the length of time between the previous and current proceedings subjects this case to issue preclusion.

However, under the doctrine of collateral estoppel, there must exist a final judgment on the specific issue in question. In this case, the charges were dropped *without* any final judgment being rendered. Without a final judgment on the issue that was litigated – in this

10

R11

case, whether the defendant was actually guilty of the crimes from 1991 to 2003 – the doctrine of collateral estoppel is unavailable to the defendant to prevent later litigation.

As to the defendant's attempt to tie the dismissal of charges pursuant to a *nolle prosequi* to the concept of double jeopardy, the Supreme Court of Pennsylvania has noted that "since a *nolle prosequi* acts neither as an acquittal nor a conviction, double jeopardy does not attach to the original criminal bill or information." Commonwealth v. Ahearn, 670 A.2d 133, 135 (Pa. 1996). Therefore, Defendant's attempt to connect *nolle prosequi* and double jeopardy must fail as a matter of law.

**D.   Whether the trial court should vacate the sentence due to an alleged lack of legal sufficiency of evidence.**

A claim challenging the sufficiency of the evidence is a question of law. Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). Evidence is sufficient to support the verdict when it "establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* at 751, citing Commonwealth v. Karkaria, 625 A.2d 1167 (Pa. 1993). "When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Id.*, citing Commonwealth v. Chambers, 599 A.2d 630 (Pa. 1991).

In this case, Defendant makes several arguments alleging lack of legal sufficiency of evidence. First, the defendant argues that all of the charges of incest must be based in a separate charge of some sexual crime. In other words, the 200 charges of incest cannot be sustained by the 146 other charges involving sex which underlie the former. Second, the Defendant argues that the victim never testified to 346 individual instances where she had sexual contact with the defendant. In support of this contention, the defendant argues that the

11

R12

only proof offered by the Commonwealth is the victim's testimony and photographs of the victim in seductive poses. Third, the defendant argues that no one testified to corroborate the victim's testimony, and there was no DNA taken from the sex tools shown to the jury.

In response to the defendant's first argument, the charges for incest do not need to match the charges of other sexual crimes. Under 18 Pa.C.S. § 4302, a person is guilty of incest if he "knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood." This statute does not mandate a sexual crime other than incest, but rather, only requires marriage, cohabitation, or sexual intercourse in conjunction with relation of the parties. The other crimes of which the defendant has been charged have different elements than incest and do not merge in the way that the defendant seems to be suggesting.

As to the defendant's argument that the Commonwealth was required to present evidence of each individual instance of each crime, the evidence viewed in the light most favorable to the verdict winner, the Commonwealth, is sufficient to support each of the convictions. At trial, calendars were entered into evidence which tracked the individual instances of vaginal sexual intercourse which occurred between the defendant and the victim. The victim testified that each sequentially larger number marked in the calendar signified another instance in which the defendant engaged in vaginal sexual intercourse with the victim. These numbers reached a count of over 200, almost reaching 300 in total. The Commonwealth offered electronic communications sent by the defendant as referencing these numbers in order to corroborate the victim's testimony as to the meaning of the calendars. When viewed in the light most favorable to the Commonwealth, this evidence is sufficient to support the verdict for each individual conviction.

12

R13

Finally, the defendant's claim that the victim's testimony was not corroborated by the testimony of another or DNA evidence is irrelevant. While such testimony and evidence would strengthen a case, neither is a necessary element in proving a case beyond a reasonable doubt.

### E. Whether the trial court should modify the sentence.

The Supreme Court of Pennsylvania has stated that "a trial court has broad discretion in sentencing a defendant, and concomitantly, the appellate courts utilize a deferential standard of appellate review in determining whether the trial court abused its discretion in fashioning an appropriate sentence." Commonwealth v. Pasture, 107 A.3d 21, 27 (Pa. 2014), citing Commonwealth v. Perry, 32 A.3d 232 (Pa. 2011), and Commonwealth v. Walls, 926 A.2d 957 (Pa. 2007). The Supreme Court applies the following standard for the review of the merits of a challenge to the trial court's sentencing discretion:

> Our Court has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly

13

R14

disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

Commonwealth v. Walls, 926 A.2d 957, 961-62 (Pa. 2007) (citations omitted).

Further, the law of Pennsylvania allows the effective imposition of a life sentence through the imposition of consecutive sentences because the imposition of consecutive rather than concurrent sentences rests within the trial court's discretion. Commonwealth v. Harvard, 64 A.3d 690, 703 (Pa. Super. 2013) citing Commonwealth v. Ahmad, 961 A.2d 884 (Pa. Super. 2008).

In the present case, Defendant was sentenced pursuant to both the sentencing guidelines and the discretion of the trial court The discretion of the court was founded upon the evidence presented at trial – evidence including but not limited to the repeated sexual abuse of a daughter by her father by forcing her to perform oral sex at the age of seven, anal sex by the age of eight, and vaginal sex by the age of thirteen, and continuing through adulthood, the "agreements" signed by the daughter giving the father "rights" over her breasts, hair, money, and self, and the demeanor of the parties involved which cannot be conveyed through a cold reading of the transcript. It was a lifetime of torture. Further, there is no evidence in the sentence of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to make it clearly erroneous. Therefore, the Motion to Modify Sentence is denied.

IV.    Conclusion.

For the foregoing reasons, the trial court did not err in its determinations at trial and sentencing, and the Defendant's post-sentencing motions are hereby denied.

ORDER OF COURT

AND NOW, this 30th day of March, 2016, Defendant's Post-Sentence Motion is deemed denied by operation of law as one hundred twenty (120) days have expired since the

14

R15

filing of said motion. However, said motions would have been denied in accordance with the accompanying Memorandum Opinion.

BY THE COURT:

/s/ *Maureen T. Beirne*_____P.J.

ts
attn.: Ct Admin

15

R16